666 A.2d 714

**COMMONWEALTH of Pennsylvania**

v.

**Darrel NELSON, Appellant.**

Superior Court of Pennsylvania.

Submitted June 19, 1995.

Filed Oct. 19, 1995.

242

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Scott A. Bradley, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before ROWLEY, President Judge, and WIEAND and KELLY, JJ.

WIEAND, Judge:

On April 28, 1994, Darrel Nelson entered pleas of nolo contendere to forty-one (41) drug charges, including ten (10) counts of delivery of controlled substances,[1] twelve (12) counts of possession with intent to deliver controlled substances,[2] fifteen (15) counts of possession of controlled substances,[3] and

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, § 13, 35 P.S. § 780–113(a)(30).

2. *Id.*

3. *Id.* at § 780–113(a)(16).

four (4) counts of possession of drug paraphernalia.[4] Following the preparation of a pre-sentence report, Nelson was sentenced, on June 24, 1994, to serve an aggregate term of imprisonment for not less than twelve and one-half (12 and ½) years nor more than thirty (30) years, and to pay a fine of $250,000. A motion for reconsideration of sentence was denied, and this appeal followed. On direct appeal from the judgment of sentence, Nelson argues that: (1) his trial counsel was ineffective for failing to advise him, prior to his entry of pleas of nolo contendere, of a possible due process defense based upon outrageous police conduct; and (2) his sentence was manifestly excessive. After careful review, we affirm the judgment of sentence.[5]

According to the factual summary presented by the Commonwealth prior to the acceptance of appellant's pleas of nolo contendere, appellant was the subject of an undercover police investigation conducted in Pittsburgh from June 8, 1993 through September 17, 1993. Officer Brian Fleming of the City of Pittsburgh Police Department, who was working in an undercover capacity, made ten purchases of heroin from appellant, the first four of which involved relatively small quantities. On June 8, appellant sold Fleming a gram of heroin for $550. On June 10, appellant provided another gram of heroin to Fleming. This was purportedly of higher quality and sold for $600. On June 16, after entering and exiting an apartment building in the 2500 block of Chauncey Drive, appellant produced a gram of heroin encased in a blue balloon which he had been carrying in his mouth. This he sold to Fleming for $550. And, on August 20, appellant provided Fleming with two grams of heroin in return for $1,000 and a promise to pay an additional $100.

On August 26, Fleming requested three grams of heroin. Appellant directed Fleming to meet him on the city's North

4. *Id.* at § 780–113(a)(32).

5. In reaching our conclusion, we have carefully reviewed the appellate brief filed by the Office of the Public Defender on behalf of appellant, but we have refrained from reviewing the second brief filed pro se by appellant. See: *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993).

Side. Outside a row house located at 903 Kirkbride Street, Fleming observed appellant and gave him $1,600. Appellant took the money and directed Fleming to meet him at the side door of the building, where he gave the heroin to the officer. During this transaction, appellant provided six grams of heroin instead of the three grams requested by Fleming. Appellant told Fleming that he could owe appellant $1,850 for the additional three grams being fronted.

On August 30, after paying appellant the $1,850 owed from the prior transaction, Fleming requested a quarter ounce of heroin. Appellant responded that a quarter ounce would cost three or four thousand dollars. When Fleming indicated that he would have to get the money, he and appellant agreed to meet later. When they did meet again, appellant gave Fleming a half ounce of heroin, along with a white plastic bottle containing quinine, which appellant said was to be used for cutting the heroin. Fleming handed appellant $3,000, and appellant told him that he would owe an additional $3,200. At this time, appellant mentioned that he would soon have a couple kilograms of cocaine available for sampling.

On September 2, Fleming knocked on the door of apartment number 3 at 2100 Elmore Square in an attempt to meet appellant and pay him the money owed. After a delay, appellant appeared, and indicated that he had been eating. Fleming told appellant that he wanted to purchase more heroin. Appellant directed Fleming to drive him to the corner of Morgan and Webster Streets in the Hill District. There, appellant got out of the car and walked away, only to return a few minutes later with a bottle of quinine and two bottles of Dormin, an over-the-counter sleep preparation which, appellant said, was better than quinine for cutting heroin. Appellant said that he had paid $50 for each bottle of Dormin, but that he was charging Fleming $75 because Dormin was very difficult to buy in the Pittsburgh area and he was obtaining it from Detroit or Chicago. Appellant instructed Fleming to drive him to 903 Kirkbride Street, where appellant exited the vehicle, and entered the residence. Upon returning to the vehicle, he handed a half ounce of heroin to Fleming.

On September 7, after Fleming had paid appellant all amounts owing, appellant fronted him seven grams of heroin and a bottle of quinine. Appellant indicated that the kilograms of cocaine which he had hoped to get were of poor quality and thus, he had not purchased any of them. Appellant also informed Fleming that he would be doing some jail time for federal tax evasion, but that his wife would take care of supplying the officer.

On September 8, appellant paged Fleming five times. After Fleming returned the call, appellant indicated that he needed $4,000 of the money which Fleming owed to cover the cost of a new shipment of heroin. They met subsequently and Fleming gave appellant the money requested.

On September 15, appellant provided Fleming with an ounce of heroin and indicated that he could provide all the heroin the officer wanted. On September 17, Fleming gave appellant $9,000 towards payment of his outstanding debt. Appellant told Fleming about a friend in Florida who was supplying him with cocaine, and suggested that $1,300 in profits could be made from the sale of an ounce of cocaine if the officer was interested. Appellant also handed Fleming a cellophane candy bag containing two one-half ounce packages of heroin and a quarter ounce package of heroin. At that point, Officer Fleming signaled to surveillance officers that the transaction had taken place, and appellant was placed under arrest.

After appellant's arrest, seven search warrants were executed and numerous items were seized from his several residences, including crack cocaine, $6,600 in cash, bottles of Dormin and quinine, baggies with residue, and various other items of drug paraphernalia related to the distribution of controlled substances. All of the controlled substances obtained from appellant were submitted to the Allegheny County Crime Lab and tested positive for the presence of heroin or cocaine.

Appellant argues that the police improperly delayed arresting him, in order to amass a number of charges against him

and to subject him to progressively longer mandatory minimum sentences. The applicable sentencing provisions provide enhanced penalties and mandatory minimum sentences for each transaction involving heroin weighing over two grams. See: 18 Pa.C.S. § 7508. Instantly, the first four deliveries by appellant to officer Fleming involved quantities under two grams. Therefore, if appellant had been arrested before the fifth transaction, he would not have become subject to the imposition of mandatory minimum sentences. Appellant argues, therefore, that the delay in arresting him constituted outrageous government conduct; and, if he had been aware of it, he never would have pleaded nolo contendere. He contends that trial counsel was ineffective for failing to apprise him of this defense, which led to his entry of unknowing pleas.

The Commonwealth, on the other hand, asserts that the police were justified in continuing the investigation beyond its early stages in order to build a relationship with appellant and to ascertain the extent of appellant's drug trafficking enterprise. Indeed, on August 26, 1993, the date of the fifth delivery, appellant offered to "front" heroin to the officer and delivered to him six, instead of the three grams which Fleming had requested, thus indicating that appellant was able to provide heroin without requiring immediate cash payment. During the course of the three month investigation, appellant increasingly "fronted" larger quantities of heroin and introduced the possibility of cocaine for sale.

In terms of its effect upon a case, a plea of nolo contendere is treated the same as a guilty plea. *Commonwealth v. Boatwright*, 404 Pa.Super. 75, 83, 590 A.2d 15, 19 (1991). By entering a plea of nolo contendere, a defendant waives "all defects and defenses except those concerning the jurisdiction of the court, legality of sentence, and validity of plea." *Commonwealth v. Johnson*, 319 Pa.Super. 463, 474, 466 A.2d 636, 642 (1983). See also: *Commonwealth v. Coles*, 365 Pa.Super. 562, 569, 530 A.2d 453, 457 (1987). Therefore, "[o]nce a defendant has entered a plea of [nolo contendere], it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." *Common-*

*wealth v. West,* 336 Pa.Super. 180, 186, 485 A.2d 490, 493 (1984). See also: *Commonwealth v. Brown,* 242 Pa.Super. 240, 244, 363 A.2d 1249, 1251 (1976).

"In order for appellant to prevail on a claim of ineffectiveness [of counsel], he must demonstrate that: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him." *Commonwealth v. Blount,* 538 Pa. 156, 163, 647 A.2d 199, 203 (1994). See also: *Commonwealth v. Pierce,* 515 Pa. 153, 158–159, 527 A.2d 973, 975 (1987). "Where an allegation of ineffective assistance of counsel is made in connection with the entry of a plea of [nolo contendere], such allegation 'will serve as a basis for relief only if the ineffectiveness caused appellant to enter an involuntary or unknowing plea.' " *Commonwealth v. Fluharty,* 429 Pa.Super. 213, 217, 632 A.2d 312, 314 (1993), quoting *Commonwealth v. Chumley,* 482 Pa. 626, 641, 394 A.2d 497, 504 (1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979). See also: *Commonwealth v. Owens,* 321 Pa.Super. 122, 130, 467 A.2d 1159, 1163 (1983).

Instantly, appellant alleges that he entered unknowing pleas of nolo contendere to numerous drug offenses because his trial counsel failed to apprise him that the police involvement in continually making undercover purchases of narcotics from him, in order to subject him to enhanced penalties, was so outrageous as to violate due process. Appellant argues, therefore, that his pleas were the result of ineffectiveness on the part of trial counsel in failing to assert an available defense.

With respect to allegations that police conduct was so outrageous as to offend due process, the Superior Court has observed as follows:

It is correct, as appellant argues, that the Superior Court held in *Commonwealth v. Mathews,* 347 Pa.Super. 320, 500 A.2d 853 (1985), that "police involvement in criminal activity may be so outrageous that a prosecution will be barred on

due process grounds." *Id.,* 347 Pa.Superior Ct. at 321, 500 A.2d at 854. See: *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). See also: *Commonwealth v. Bonace,* 391 Pa.Super. 602, 607, 571 A.2d 1079, 1082 (1990); *Commonwealth v. Delligatti,* 371 Pa.Super. 315, 321, 538 A.2d 34, 37 (1988). "The question whether government conduct [has been] so outrageous as to constitute a violation of due process is a question of law to be determined by the court, not the jury." *United States v. Engler,* 806 F.2d 425, 430 (3d Cir.1986), *cert. denied,* 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987). See also: *United States v. Swiatek,* 819 F.2d 721, 726 (7th Cir.1987), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987); *United States v. Salazar,* 720 F.2d 1482, 1488 (10th Cir.1983), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Prairie,* 572 F.2d 1316, 1319 (9th Cir.1978); *United States v. Quinn,* 543 F.2d 640, 648 (8th Cir.1976); *Commonwealth v. Lindenmuth,* 381 Pa.Super. 398, 403, 554 A.2d 62, 64 (1989). Before the conduct of law enforcement officials or government agents will be found to have violated due process, however, it must be shown that police conduct was " 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " *United States v. Ramirez,* 710 F.2d 535, 539 (9th Cir.1983), quoting *United States v. Ryan,* 548 F.2d 782, 789 (9th Cir.1976), *cert. denied,* 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977). See also: *United States v. Ofshe,* 817 F.2d 1508, 1516 (11th Cir.1987), *cert. denied,* 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987); *Owen v. Wainwright,* 806 F.2d 1519, 1521 (11th Cir.1986), *cert. denied,* 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987). The establishment of a due process violation "generally requires 'proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity.' " *United States v. Duvall,* 846 F.2d 966, 973 (5th Cir.1988), quoting *United States v. Nations,* 764 F.2d 1073, 1077 (5th Cir.1985). Moreover, for due

process to bar a conviction, the government's involvement in the commission of the crime "must be *malum in se* or amount to the engineering and direction of the criminal enterprise from beginning to end." *United States v. Citro,* 842 F.2d 1149, 1153 (9th Cir.1988), *cert. denied,* 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). See also: *United States v. Williams,* 791 F.2d 1383, 1386 (9th Cir. 1986), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986); *United States v. Gonzales,* 539 F.2d 1238, 1239–1240 (9th Cir.1976).

Review of federal decisions reveals that the conduct of the government in conducting criminal investigations will be found to violate due process " 'only in the rarest and most outrageous circumstances.' " *United States v. Arteaga,* 807 F.2d 424, 426 (5th Cir.1986), quoting *United States v. Yater,* 756 F.2d 1058, 1066 (5th Cir.1985), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). See also: *United States v. Rubio,* 834 F.2d 442, 450 n. 6 (5th Cir.1987); *United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Cir.1984), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). Thus, the Court of Appeals for the Third Circuit has said:

[A] successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense.... We must necessarily exercise scrupulous restraint before we denounce law enforcement conduct as constitutionally unacceptable; the ramifications are wider and more permanent than when only a statutory defense is implicated.

*United States v. Jannotti,* 673 F.2d 578, 607 (3d Cir.1982), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). See: *Hampton v. United States, supra* 425 U.S. at 495 n. 7, 96 S.Ct. at 1653 n. 7, 48 L.Ed.2d at 122 n. 7 (Powell, J. Concurring) ("Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction."). See also: *United States v. Ward,* 793 F.2d 551, 553–555 (3d Cir.1986); *United States v. Gambino,* 788 F.2d 938, 945 n. 6 (3d Cir.1986), *cert. denied,*

479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *United States v. Beverly,* 723 F.2d 11 (3d Cir.1983).

*Commonwealth v. Benchino,* 399 Pa.Super. 521, 525–527, 582 A.2d 1067, 1069–1070 (1990). See also: *Commonwealth v. Mance,* 539 Pa. 282, 291–293, 652 A.2d 299, 303–305 (1995).

■ The courts of this Commonwealth have not addressed the type of police conduct which appellant claims the police engaged in in this case. Several federal appellate courts, however, have discussed and analyzed this type of case and have described the issue as one of "sentencing entrapment" or "sentencing factor manipulation." "Sentencing entrapment [is] ' "outrageous official conduct [which] overcomes the will of an individual predisposed only to dealing in small quantities [of illicit drugs]" for the purpose of increasing the amount of drugs ... and the resulting sentence of the entrapped defendant.' " *United States v. Barth,* 990 F.2d 422, 424 (8th Cir.1993), quoting *United States v. Rogers,* 982 F.2d 1241, 1245 (8th Cir.1993), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993). The First Circuit Court has observed:

> It cannot be gainsaid that the sentencing guidelines, by their very nature, may afford the opportunity for sentencing factor manipulation, particularly in sting operations. We can foresee situations in which exploitative manipulation of sentencing factors by government agents might overbear the will of a person predisposed only to committing a lesser crime. This danger seems especially great in cases where the accused's sentence depends in large part on the quantity of drugs or money involved. There is, however, another side to the story. By their nature, sting operations are designed to tempt the criminally inclined, and a well-constructed sting is often sculpted to test the limits of the target's criminal inclinations. Courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties.

*United States v. Connell,* 960 F.2d 191, 196 (1st Cir.1992). See also: *United States v. Lenfesty,* 923 F.2d 1293, 1300 (8th Cir.1991); *United States v. Stuart,* 923 F.2d 607, 613–614 (8th

Cir.1991), *cert. denied,* 499 U.S. 967, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991).

After careful review, we are satisfied that appellant's claim of outrageous conduct on the part of the police is lacking in arguable merit. The government did not violate due process merely by employing an undercover operative. *Commonwealth v. Benchino, supra* at 528, 582 A.2d at 1070. While it may be true that police could have arrested appellant after any one of the several transactions, an early arrest would have failed to reflect accurately the level of appellant's participation in the local drug trafficking. Here, the police did not engineer, direct or become overinvolved in appellant's drug trafficking operation. *Commonwealth v. Benchino, supra* at 526, 582 A.2d at 1069. There is nothing about the investigation to suggest that police conduct "violated fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *Commonwealth v. Delligatti,* 371 Pa.Super. 315, 322, 538 A.2d 34, 37–38 (1988). See also: *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366, 373 (1973). The police reasonably and justifiably set out to build a relationship with appellant, in order to ascertain the nature and scope of his drug trafficking enterprise. By doing so, they were able to demonstrate that appellant was not merely a "nickel and dime" dealer, but a high volume drug trafficker in the Pittsburgh area. Appellant was in no way forced or coerced to continue selling drugs to the undercover police agent. He was merely afforded the opportunity to do so. Under the circumstances of the instant case, therefore, we hold that the conduct of the police did not rise to the level of outrageous conduct which would preclude appellant's prosecution for all of the drug transactions in which he engaged.

Since appellant's due process rights were not violated by police conduct, appellant's counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Pierce, supra* at 160, 527 A.2d at 976. There is no basis upon which to find that appellant's pleas of nolo contendere were

involuntarily or unknowingly made. *Commonwealth v. Owens, supra.*

■ Appellant's remaining contention is that his sentence is manifestly excessive and that the trial court impermissibly based its sentence solely upon the seriousness of his crimes and failed to consider the effect of his own drug addiction and the outrageous conduct by the police. Because appellant is challenging the discretionary aspects of sentencing, we must determine whether he has raised a substantial question as to whether his sentence was appropriate under the Sentencing Code as a whole. See: 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 511, 522 A.2d 17, 18 (1987).

■ "Although the existence of a substantial question must be determined on a case by case basis, the Superior Court will generally review the discretionary aspects of sentencing where a colorable argument is made that the actions of the sentencing court were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Groft,* 424 Pa.Super. 510, 520, 623 A.2d 341, 347 (1993). However, the Superior Court has "held that a claim of excessiveness of sentence does not raise a substantial question so as to permit appellate review where the sentence is within the statutory limits." *Commonwealth v. Jones,* 418 Pa.Super. 93, 106, 613 A.2d 587, 593 (1992) (en banc). See also: *Commonwealth v. Canfield,* 432 Pa.Super. 496, 500, 639 A.2d 46, 48 (1994); *Commonwealth v. Breter,* 425 Pa.Super. 248, 251, 624 A.2d 661, 662 (1993). Similarly, "[a]n allegation that a sentencing court 'failed to consider' or 'did not adequately consider' certain factors does not raise a substantial question that the sentence was inappropriate." *Commonwealth v. Urrutia,* 439 Pa.Super. 227, 236, 653 A.2d 706, 710 (1995). See also: *Commonwealth v. Lawson,* 437 Pa.Super. 521, 531, 650 A.2d 876, 881 (1994); *Commonwealth v. McKiel,* 427 Pa.Super. 561, 564, 629 A.2d 1012, 1013 (1993); *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385 (1989) (en banc). Instantly, appellant's sentence falls within statutory limits. Because the

claims asserted by appellant do not raise a substantial question, further review of the discretionary aspects of sentencing is not warranted.

Moreover and in any event, there was no abuse of discretion on the part of the trial court in imposing appellant's sentence. As we have already observed, the conduct of the police during the investigation of appellant's drug trafficking activities was not "outrageous"; and, therefore, the trial court's failure to consider it when sentencing appellant was not improper. The trial court had the benefit of a pre-sentence report; and, therefore, it may be presumed that the court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988). "Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed." *Id.* at 102, 546 A.2d at 18. Here, the imposition of an aggregate sentence of not less than twelve and one-half years nor more than thirty years for appellant's extensive and wide ranging drug distribution enterprise cannot be deemed manifestly excessive.

The judgment of sentence is affirmed.