COMMONWEALTH of Pennsylvania,
Appellee,

v.

Steven B. KRAFT, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 16, 1999.

Filed Sept. 14, 1999.

Reargument Denied Nov. 17, 1999.

Linda S. Hollinger, York, for appellant.

Joseph C. Adams, Asst. Dist. Atty., York, for the Com., appellee.

Before STEVENS, ORIE MELVIN and BROSKY, JJ.

STEVENS, J.:

¶ 1   This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Lehigh County against Appellant for Harassment by Stalking.[1] We are presented with the issue of whether a criminal defendant may challenge the decision to terminate his participation in the Accelerated Rehabilitative Disposition program ("ARD") if he pleads *nolo contendere* to the reimposed charges.  We affirm.

¶ 2   On November 14, 1996, Appellant was charged with stalking his former wife. He was accepted into the ARD program on May 27, 1997, and was placed under the supervision of the York County Probation Department for twelve (12) months, during which time he was to remain in good behavior, and have no verbal, physical, or written contact with his former wife. Nearly eight months into Appellant's participation in the program, however, the Commonwealth petitioned for Appellant's removal based on allegations that Appellant had violated the "good behavior" requirement.

¶ 3   At the subsequent hearing, testimony from Appellant's probation officer and anger management counselor established that Appellant, on several occasions, stated to them that his life would improve

---

1.   18 Pa.C.S.A. §§ 2709(b)(1), (2).

if his wife were dead, that he no longer cared about what happened to him, that he had to take matters into his own hands given the lack of legal recourse for his situation, and that he was familiar with demolitions from his military experiences. N.T. 2/9/98 at 6, 15. The counselor further testified that such statements were related to Appellant's present state of mind and inclinations. N.T. 2/9/98 at 27. The hearing court agreed that Appellant's statements violated the "good behavior" condition of his ARD program, and ordered that the program be terminated and that the Commonwealth proceed on the original charge.

¶ 4 At the pretrial conference held on April 15, 1998, Appellant submitted a counseled plea of *nolo contendere* to the charge of harassment by stalking, but only after his attorney informed the sentencing court that Appellant was "reserving the right to appeal the court's decision to remove [Appellant] from the ARD program in the first instance, [as] the right to appeal doesn't accrue until there's a conviction...." N.T. 4/15/98 at 4. The sentencing court agreed that Appellant's right to appeal stemmed from his conviction and sentence, and began the colloquy, during which Appellant stated that he understood his "appeal rights are narrowly restricted by the entry of a plea." N.T. 4/15/98. At the conclusion of the hearing, the court sentenced Appellant to twelve (12) months' probation plus payment of costs, ordered him to continue counseling, and prohibited him from having personal contact with his former

wife. N.T. 4/15/98 at 11. This timely appeal follows.

¶ 5 Appellant argues that "the [hearing] court erred in removing Appellant from the ARD program for violating the 'good behavior' condition where Appellant had not violated any law." Appellant's Brief at 10. The Commonwealth, however, objects that Appellant waived his right to raise such a claim when he entered his plea of *nolo contendere*. Upon review of the parties' briefs and relevant authority, we agree with the Commonwealth that we are precluded from reviewing Appellant's claim on the merits.

■■■■ ¶ 6 To the extent that Appellant argues his ARD termination was not appealable to this Court until after judgment of sentence was imposed, he is correct. A criminal defendant may not appeal from an order that terminates his participation in an ARD program due to a violation of one of its conditions. See Pa. R.Crim.P. 184(c); *Commonwealth v. Rudy*, 434 Pa.Super. 277, 642 A.2d 1130 (1994). Instead, the right to such appellate review accrues only when the reinstated charges are resolved adversely to the defendant and the trial court imposes sentence. *Id.*

■■■■ ¶ 7 However, we see no reason why we should carve an exception into the axiomatic principle that a defendant who pleads *nolo contendere* waives all defects and defenses except those concerning the jurisdiction of the court, legality of sentence, and validity of plea.[2] *Common-*

---

2. The Dissent would find the within challenge properly preserved as an exception to the above waiver rule since the challenge stems from an interlocutory pre-trial judicial decision which could not be appealed until the court imposed sentence. In support of its opinion, the Dissent relies on *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975), wherein the Supreme Court held that a defendant had not waived his right to challenge his transfer from the juvenile system despite having thereafter pled guilty to the criminal charges facing him. The Dissent's reliance on *Pyle* is misplaced, however, as the nature of the infirmity alleged in *Pyle* was jurisdic-

tional, that is, defendant alleged that jurisdiction over his matter was properly in the Juvenile Court rather than in the Criminal Court. Indeed, the Court in *Pyle* found an exception to waiver applicable in large part because of the jurisdictional question presented therein, noting that "one of the prime purposes of the Juvenile Act is to spare from *adult* punishment certain youths...." *Id.*, 462 Pa. at 617, n. 4, 342 A.2d at 103, n. 4 (emphasis added).

No such jurisdictional challenge can legitimately be made herein, as ARD necessarily applies to cases already within the jurisdiction of a Criminal Court. ARD may be grant-

*wealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714 (1995). The Pennsylvania Rules of Criminal Procedure admit of no special treatment to be accorded defendants who ultimately are declared unfit for ARD, and, in fact, instruct that the cases of such defendants are to proceed as if ARD proceedings had not taken place. See, e.g., Rules 162(c) and 183. To this effect, the precise language of Rule 184 specifies that once a defendant has been found to have violated a condition of his program, "the attorney for the Commonwealth shall proceed on the charges as provided by law."

¶ 8 Accordingly, we apply the principles attendant to a plea of *nolo contendere* to the within case, and conclude that Appellant's challenge directed at the propriety of his ARD termination does not concern the jurisdiction of the court, the legality of his sentence, or the validity of his plea. Indeed, Appellant offers no reason why we should hold otherwise. Therefore, we hold that Appellant waived his ability to raise this issue when he entered a plea of *nolo contendere.*

¶ 9 Judgment of sentence affirmed.

¶ 10 BROSKY, J., filed a Dissenting Opinion.

BROSKY, J., dissenting.

¶ 1 I dissent. Appellant asserts that the court erred in terminating his participation in ARD for violating the "good behavior" condition. The majority concludes that appellant waived this challenge due to the fact that he entered a plea of *nolo contendere.* In finding waiver the

majority cites the "axiomatic principle that a defendant who pleads nolo contendere waives all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and validity of plea. *Commonwealth v. Nelson*, 446 Pa.Super. 240, 666 A.2d 714 (1995)." The majority is correct to assert that the above principle is "axiomatic." However, they neglect to realize that it is a general principle. More thorough restatements of the principle are prefaced with the phrases/words "absent unusual circumstances" and "normally." What circumstance might qualify to render the general rule not applicable? For one, an otherwise interlocutory pre-trial judicial decision denying a transfer to juvenile court.

¶ 2 In *Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975), a juvenile was charged as an adult for criminal homicide and sought to transfer the case into juvenile court. On a related matter a juvenile charge was filed against appellant for theft. The Commonwealth sought a transfer of this charge for adult prosecution. The court granted the transfer and appellant subsequently pled guilty to both charges. After appellant was sentenced he appealed the court's decision that required he be tried as an adult. Before addressing the merits of appellant's challenge the Court acknowledged the general rule that the entry of a guilty plea constitutes a waiver of any non-jurisdictional defects or defenses. However, it found the appeal properly before the court anyway. In reaching this conclusion the court noted that the decision in question was

---

ed only after criminal proceedings have been instituted, Pa.R.Crim.P. 176, and simply postpones further criminal proceedings on the pending charges while the defendant participates in the program. Pa.R.Crim.P. 181. Moreover, where the defendant violates a condition of the ARD program, the court may terminate the program, and the previously pending criminal charges may then be prosecuted by the Commonwealth. Pa.R.Crim.P. 184. In this light, it is not surprising to find that the two main goals of ARD do not include sparing persons from the jurisdiction of

the criminal court but include, instead, "the rehabilitation of the offender" and "the prompt disposition of charges, eliminating the need for costly and time-consuming trials or other court proceedings." See Committee Introduction to Pa.R.Crim.P. 160–186. In short, because it had properly been in the jurisdiction of the trial court below since the time that charges were originally filed against him, we distinguish Appellant's case from the facts in *Pyle*, and, accordingly, find *Pyle* inapposite.

interlocutory and was not appealable until after sentencing. Further, the court noted that the purpose of the act was to spare from adult punishment certain youths whose behavior would necessarily render them guilty of adult crimes.[3]

¶ 3 Similarly, the action at issue here, the court's termination of appellant's ARD, was interlocutory and could not be appealed until a sentence had been imposed. Further, similar to prosecution under the Juvenile Act, eligibility for ARD allows an offender to avoid prosecution for a crime for certain qualifying offenses if successfully completed. Thus, in both cases the action at issue was collateral to the determination of guilt and could not be appealed until a conviction was obtained and sentence imposed. It stands to reason then that if a plea of guilty did not constitute

waiver of the court's decision regarding eligibility for juvenile treatment then it should not constitute a waiver regarding the court's determination of eligibility for ARD.

¶ 4 Further, the above approach makes better policy. The majority's position would require a defendant, who does not have a meritorious defense to the underlying charge, to plead not guilty and take a trial merely to preserve his/her challenge to the collateral issue of whether or not his/her ARD was properly terminated. Applied to situations like the present one this position mandates the squandering of judicial resources for no good reason. Since I find the present case similar to *Pyle*, I would follow the lead taken there and find that appellant's appeal is properly before us.

3. The majority argues that my reliance upon *Pyle* is misplaced because the challenge leveled in *Pyle* was "jurisdictional" whereas the challenge leveled here is not. Although the general waiver rule relied upon by the majority excepts defects and defenses "concerning the jurisdiction of the court" it is not clear from that recitation of the rule what kinds of jurisdictional defects or defenses it contemplates.

However, there is no question that jurisdiction of the Criminal Division of the Court of Common Pleas was proper in *Pyle* just as it is here. The juvenile in *Pyle* was charged with murder. Thus, jurisdiction was properly in Criminal Court, although a transfer was possible to Juvenile Court upon a showing that the interests of state and society required transfer. This decision was entrusted to the court's discretion and was not a matter of entitlement. See, *Pyle*, 342 A.2d at 104. Thus, the challenge in *Pyle* was not a "jurisdictional defect," or defense, as that term is commonly understood. A jurisdictional defect has generally been thought to mean that the court is without power to hear the matter, and such was clearly not the case in *Pyle*. Rather, the juvenile in *Pyle* was attacking the court's decision not to transfer the case to Juvenile Court. In essence, the majority's thesis suggests that the "jurisdictional defects" which the waiver rule excepts would include questions regarding which divisions within the Court of Common Pleas should hear the case, i.e., Criminal Division or Juvenile Division. However, while it is possible they are correct on this point, their thesis is unsupported by caselaw.

Nevertheless, the majority's assertion regarding my reliance upon *Pyle* appears flawed (and further misses the point I endeavored to make) because it does not appear that our Supreme Court viewed the challenge in *Pyle* as a jurisdictional one. This is clear because the Court seems to regard it as necessary to justify or explain its decision to find the challenge "properly preserved" despite the general rule relied upon by the majority and acknowledged by the Supreme Court in *Pyle*. If in fact the Supreme Court viewed the challenge leveled in that case to be "jurisdictional" in nature such an exercise would have been unnecessary, as the appeal would have fallen squarely within the rule in question. That is, the tendering of a guilty plea would not have constituted a waiver of that jurisdictional challenge and the Supreme Court would not have needed to defend or explain its actions in considering the issue. Rather, the Court could have merely noted that appellant's challenge was jurisdictional and, therefore, not waived by the guilty plea.

Instead the Court apparently felt it necessary to defend its decision to find the appeal "properly preserved." Thus, even if the challenge in *Pyle* was "jurisdictional," for purposes of the waiver rule, it does not appear that the Supreme Court was relying upon that fact in finding the appeal properly preserved. Indeed, it appears that the Court was finding one of those "unusual circumstances" where tendering a guilty plea does not constitute waiver. In my opinion the circumstances of *Pyle* are very analogous to the circumstances here and we should similarly find the challenge "properly preserved."

¶ 5   As for the merits of appellant's appeal, appellant was removed from the ARD program for "bad behavior." Specifically, appellant was alleged to have made statements that were regarded as threatening toward his ex-wife. The basis of appellant's removal was the testimony of Ms. Kelly S. Jackson, a probation officer. According to Jackson, appellant, who was prohibited from any contact with his ex-wife remarked to Jackson that "he felt like a caged animal in a corner, because he felt that he had to look over his shoulder everywhere he goes, because if he has seen the victim he would get in trouble. And he said the only way that he wouldn't feel like this is if she dies or if she is dead." (N.T. hearing of February 9, 1998, p. 6). Ms. Jackson testified that she was disturbed by appellant's comments and went to get another officer after which they continued a discussion with appellant. During this discussion appellant admitted that he had previously planned on killing his ex-wife but spared her because her mother was terminally ill. *Id.*, p. 7.

¶ 6   Testimony was also received from David A. Houseal, appellant's counselor in a program for individuals who have committed domestic abuse. Mr. Houseal related a conversation he had with appellant wherein appellant related feeling that "he had lost his honor, that he didn't care about what happened to him anymore. That he felt like he had to take things into his own hands, that he had no legal recourse to the circumstances he was in." *Id.*, p. 15. Appellant also related that he had previous demolition experience from the military. Mr. Houseal testified that he became alarmed by appellant's statements and feared appellant might harm his ex-wife.

¶ 7   Based upon the above appellant was found to have violated the generic "good behavior" requirement for ARD inclusion and was removed from the ARD program.

¶ 8   Appellant argues that the court erred in removing him from the ARD program, as his conduct did not constitute "bad behavior." I must agree. Appellant was made to participate in programs that encouraged, if not required, him to divulge and relate his personal feelings and thoughts as it bore upon the situation which led to his participation in ARD in the first place, that is, his prior stalking and harassment of his ex-wife. Upon doing so he has been expelled from the ARD program for which he was originally deemed a deserving candidate.

¶ 9   It should not escape notice that the crimes appellant was accused of relate to individuals with intensely passionate, obsessive and, perhaps, irrational emotions. In many cases perpetrators of such crimes will have emotions similar to those appellant expressed. Moreover the fact that perpetrators of such crimes possess such emotions is the very reason that counseling and therapy is required of them. To require appellant to participate in such programs and then use the communications against him to expel him from the ARD program seems fundamentally unfair and contrary to principles of due process.

¶ 10   Further, appellant has committed no crime and none of appellant's comments constitute direct threats, i.e., an expression of a present intent to do harm to his ex-wife. Indeed, Mr. Houseal admits as much. He stated "That was vague. He didn't say, I am going to shoot her or I am going to do anything to her." *Id.*, at p. 24. In reality, although appellant's comments were disturbing they did not constitute direct threats nor could it be argued that they were made to intimidate or inflict fear in appellant's ex-wife since they were not communicated to her.

¶ 11   Recently, this court sitting *en banc* refused to find threatening language to constitute contempt of a PFA order in *Commonwealth v. Baker*, 722 A.2d 718 (Pa.Super.1998), even though the language was considerably more threatening than the statements at issue here. There upon being served with a PFA order the appel-

lant stated "I'm going to kill this bitch." Despite the fact that the appellant there used language reflecting a present intent to kill his ex-girlfriend, we concluded that since the threat was not made in his ex-girlfriend's presence it did not violate the PFA order, which prohibited threatening the ex-girlfriend. In reaching the above conclusion the court indicated that "those seeking to limit another individual's speech by subjecting it to criminal sanctions via a prohibitive order must do so in a clear and definite manner." *Id.*, 722 A.2d at 722, n. 1. Although the present matter is different than that considered in *Baker*, I believe *Baker* is instructive in any event. Here imprisonment is being tied to a rather general term "good behavior," and appellant will be imprisoned for speech considerably more ambiguous than that found in *Baker*.

¶ 12 For the above reasons I believe the decision to remove appellant from the ARD program should be reversed and appellant's judgment of sentence vacated.

### In re J.S.