771 A.2d 767

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert E. GUNTER, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 17, 2001.

Decided May 22, 2001.

Cappy and Nigro, JJ., filed concurring opinions.

Saylor, J., filed dissenting opinion in which Castille and Newman, JJ., joined.

David Crowley, Bellefonte, for Robert E. Gunter.

Karen E. Kuebler, York, Ray F. Gricar, Bellefonte, for Com.

Before FLAHERTY, C.J., ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

ZAPPALA, Justice.

We granted allocatur to address two issues first, whether the lower courts applied the correct standard in considering Appellant's petition to withdraw a plea; second, whether the lower courts erred in denying that petition to withdraw the plea. For the following reasons, we reverse the order of the Superior Court and remand for further proceedings in the common pleas court.

The facts relevant to this appeal are as follows. On May 5, 1997, Appellant was arrested and charged with various violations of the Crimes Code. On May 14, 1997, a preliminary hearing was held and a trial date was set for August 25, 1997.

On August 20, 1997, Appellant pleaded *nolo contendere* to some of the charges as part of an agreement where the Commonwealth agreed to drop the remaining charges and

recommend a prison sentence of three to six years. The court administered no oral colloquy, but Appellant answered fifty-nine individual questions on a written colloquy which he signed, as did his counsel. The court accepted the plea and, on the same day, sentenced Appellant according to the Commonwealth's recommendation.

Through new counsel, eight days later, Appellant filed a motion to withdraw his plea as well as a motion to modify sentence. The court held a hearing at which Appellant and his original counsel testified. Both motions were denied.

The pertinent testimony at that hearing revealed that Appellant and his privately retained counsel had a strong disagreement as to whether Appellant should accept the Commonwealth's offer. Appellant's relevant testimony is revealed in the record as follows

Q. And if you could describe your professional relationship with [former counsel]?

A. We had our differences about taking it to trial.

Q. Would you elaborate on those differences?

A. She wanted me to accept the plea bargain and I didn't want to accept it.

Q And did you enter a nolo contendere plea on August 20, 1997?

A. Yes, I did.

Q. Prior to your entering that plea, did you and [former counsel] have any disagreement?

A. Yes, we did.

Q. And could you elaborate upon that disagreement?

A. She came up to the prison with the plea bargain and I didn't want to take the plea and that's basically what it was over. I mean I didn't want to take the plea bargain.

Q. Did she make any comments to you with respect to taking this case to trial if you weren't going to accept the plea?

A. Yes.

Q. What were those comments?

A. The one was she said if I take this to trial, she would consider kicking it to the PD's office because she felt that she couldn't see me getting, you know, more time than the actual plea bargain.

Q. And did she ever make any comments about taking this case to trial or not taking this case to trial?

A. After we selected the jury, I was pretty sure we were going to go to trial.

Q. Well, how did you feel with respect—what did you feel about her preparation for this particular upcoming trial?

A. I felt that she didn't do a very good job with questioning any of my witnesses. She didn't do that.

On direct examination as a Commonwealth witness, Appellant's previous counsel stated:

Q. Did you ever threaten to abandon him by as he said kicking it to the PD's office?

A. I told [Appellant] that I had a very difficult time with the concept that he would get more than three to six years in prison and I had also discussed this with yourself [the Commonwealth] and the Judge on the day of the plea and indicated that I was not sure that I would be able to continue to represent [Appellant] if he indeed wanted to proceed to trial because I felt that it was so much against his best interest. I felt very, very strongly on that.

On cross-examination:

Q. Had you ever told [Appellant] that you felt unprepared to go to trial?

A. I told [Appellant] it would be a lot of work to get ready for trial. I had been under the impression—the last time we had spoken prior to the August 20th plea he had indicated to me that he intended to take the plea and that he felt that that was the best thing for him to do. He didn't like it, but he felt that was the best thing for him to do so, therefore, I did not spend time prior to

that getting ready for trial because I was under the impression that he was not going to have a problem accepting the plea.

On appeal, the Superior Court examined Appellant's motion to withdraw plea in light of ineffective assistance of counsel jurisprudence. The court found that counsel explained to Appellant the meaning of a *nolo contendere* plea and that "[a]fter Appellant understood that he did not have to admit he had committed the crimes, he voluntarily agreed to so plead; he did not insist upon his innocence." Superior Court mem. at 8.

At the time of Appellant's plea, our rules required that "[t]he judge shall conduct a separate inquiry of the defendant on the record to determine whether the defendant understands and voluntarily accepts the terms of the plea agreement on which the guilty plea is based." Pa.R.Crim.P. 319(b)(2).[1] The comment, which accompanied this rule, stated:

It is difficult to formulate a comprehensive list of questions a judge must ask of a defendant in determining whether the judge should accept the plea of guilty. Court decisions may add areas to be encompassed in determining whether the defendant understands the full impact and consequences of the plea, but is nevertheless willing to enter that plea. At a minimum the judge should ask questions to elicit the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

---

**1.** This rule was amended, effective January 1, 2000, and now includes a plea of *nolo contendere*.

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement.

Pa.R.Crim.P. 319 (Comment).[2]

█ There are two different standards for withdrawal of a plea. When a motion to withdraw a plea is made prior to sentencing, the motion should be granted where the defendant has offered a "fair and just reason." *See Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268 (1973), *and also, Commonwealth v. Randolph*, 553 Pa. 224, 718 A.2d 1242 (1998). At the time of Appellant's proceedings before the trial court, Pa. R.Crim.P. 320 stated "[a]t any time before sentence, the court may, in its discretion, permit or direct a plea of guilty to be withdrawn and a plea of not guilty to be substituted." [3]

█ On the other hand, in order to withdraw a plea after sentencing the defendant must show that the court, by denying withdrawal, would be sanctioning a manifest injustice. Such a manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly. *See Commonwealth v. Persinger*, 532 Pa. 317, 615 A.2d 1305 (1992).

█ The different treatment of pre- and postsentence motions reflects the tension in our jurisprudence between the individual's fundamental right to a trial and the need for finality in the proceedings. We see no reason to change this longstanding principle at this time. Thus, we are left to

**2.** The comment to Pa.R.Crim.P. 319 was amended effective January 1, 2000, and now contemplates pleas of *nolo contendere* as well as guilty pleas.

**3.** This rule has been amended and effective January 1, 2000 reads:
**RULE 320. WITHDRAWAL OF PLEA OF GUILTY OR *NOLO CONTENDERE***
**(A)** At any time before the imposition of sentence, the court may, in its discretion, permit, upon motion of the defendant, or direct, *sua sponte*, the withdrawal of the plea of guilty or *nolo contendere* and the substitution of a plea of not guilty.
**(B)** When a defendant moves for the withdrawal of a plea of guilty or *nolo contendere*, the attorney for the Commonwealth shall be given 10 days to respond.

consider whether the common pleas court's refusal to grant the motion to withdraw the plea in this instance results in a manifest injustice.

■ Initially, our examination of the written colloquy reveals two errors that we find are of grave consequence. We note that Appellant did not plead guilty, but rather pleaded *nolo contendere*. Colloquy question number 20 asks "Do you understand that by pleading guilty, you are admitting that you committed the crimes charges? [sic]" and question number 58 asks "Do you admit that you committed the crimes with which you are charged and to which you are pleading guilty?" At the plea hearing, counsel crossed off Appellant's "Yes" answers and wrote in "Nolo" next to both of these questions. Appellant apparently then initialed both of these answers at the court's request. Not a single question of the 59 listed on the colloquy addresses the plea of *nolo contendere* and the ramifications of entering such a plea. Examples of this deficiency are: question number 18 which reads "Do you fully understand that by pleading guilty you are giving up all of these rights described in the previous questions?"; question number 22, "By pleading guilty you give up certain rights of appeal ..."; and question number 47, "Do you understand that when you plead guilty and your plea is accepted by the Court, all that remains is for the Court to sentence you on the charges to which your [sic] are pleading, but if your plea is rejected, your case will be sent back for reassignment to another judge for trial?" We find it critical that this colloquy makes no mention of the plea Appellant actually entered. If anything, Appellant's plea and answers to the colloquy indicate that he was aware of the consequences of pleading guilty and was seeking to avoid them.

The second deficiency of the colloquy is that two crucial answers were changed. Question number 50 asks, "Are you doing this of your own free will?" The answer appears to be "No" crossed out and replaced by "Yes". Question number 56 asks, "Are you presently taking any medication which might affect your thinking or your free will?" This time it appears that "Yes" was crossed out and replaced by "No". Appellant

testified at the hearing on his petition to withdraw the plea that, "I felt I wasn't doing this on my own free will, that's why I put no and [counsel] says I have to put yes down on there so I crossed it out and I put yes down." While we acknowledge that the initial responses may have been erroneously entered by Appellant and then corrected, we are extremely concerned that Appellant was not questioned further about these answers for the sake of determining, on the record, that the plea was being entered of his own free will.

Finally, we have the testimony of Appellant's attorney who stated that she was not yet prepared for trial and that she would have had difficulty in continuing to represent Appellant if he did not accept the plea agreement.[4]

In *Forbes*, a minor entered a guilty plea to murder after the trial court conducted an on-the-record colloquy. A month later, a three-judge panel convened to determine the degree of murder. Before the panel, however, the defendant requested to withdraw his guilty plea and proceed to trial stating "I don't want to plead guilty to nothing I didn't do." Another month passed and the defendant said he no longer desired to pursue his withdrawal request, and the panel reconvened to determine the degree of guilt. At that time, it became apparent that defendant's decision to abandon his withdrawal request was the result of defense counsel's threat to withdraw from the case. The defendant was found guilty of first degree murder and sentenced to life imprisonment.

While *Forbes* is often cited for the liberal standard to be applied to pre-sentence motions to withdraw a plea, as previously explained, we also stated:

A guilty plea which is not the personal and voluntary decision of the accused, but rather is "induced by promises or threats which deprive it of the character of a voluntary

---

4. The Rules of Professional Conduct state:

**RULE 1.2  Scope of Representation**

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation .... In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered whether to waive jury trial and whether the client will testify.

act, is void." *Marchibroda[Machibroda] v. United States,* 368 U.S. 487[493, 82 S.Ct. 510, 513, 7 L.E.2d 473] (1962). 299 A.2d at 271. The coercive circumstance of *Forbes,* was that the defendant's counsel threatened to abandon his client if the defendant did not renounce his desire to withdraw his guilty plea, a circumstance which "rendered involuntary appellant's decision to abandon his withdrawal request and continue with his original guilty plea." *Id.* at 270. Furthermore, "what plea to enter is a decision which must be made voluntarily and intelligently, *by the accused.*" *Id.*

Considering the facts of the present case, a lack of oral colloquy, a written colloquy which did not explain to Appellant the effect of his *nolo contendere* plea, and dubious representation, we cannot conclude that this plea was knowingly and freely entered into, and therefore permitting it is a manifest injustice. The plea is void and we remand to the Centre County Court of Common Pleas for further proceedings.

Justices CAPPY and NIGRO file concurring opinions.

Justice SAYLOR files a dissenting opinion in which Justice CASTILLE and Justice NEWMAN join.

NIGRO, Justice, Dissenting.

I concur in the result reached by the majority that Appellant did not kno. ˝ ugly and freely enter his *nolo contendere* plea and, therefore, that he should be allowed to withdraw the plea. I write separately, however, because, unlike the majority, I do not believe that the fact that some of the written colloquy questions refer to a plea of "guilty" as opposed to *"nolo contendere"* should be a consideration in deciding whether Appellant may withdraw his plea.[1] I would hold that under the circumstances of this case, Appellant's plea was not knowingly and freely entered into due to the lack of any on-

1. Although the dissenting opinion asserts that the plea form clearly indicates appellant's entry of a nolo contendere plea, it overlooks the fact that on this same plea form the word guilty is scratched out and replaced by nolo contendere.

the-record colloquy, regardless of the sufficiency of the written colloquy.

CAPPY, Justice, Concurring.

I join the majority opinion to the extent that it holds that the manifest injustice standard should apply where the defendant is seeking to withdraw his guilty plea following sentencing, even in those instances where sentencing occurs immediately following the plea colloquy. As stated by the majority opinion, a manifest injustice occurs where the defendant has not tendered a knowing, intelligent or voluntary plea. *See* Majority opinion at 771; *see also Commonwealth v. Persinger,* 532 Pa. 317, 615 A.2d 1305 (1992).

I write separately, however, to make clear that in instances where neither the written nor oral colloquy inform the defendant of the significance of pleading nolo contendere, then a defendant has not tendered a knowing, intelligent and voluntary plea and, upon request, the defendant should be permitted to withdraw the guilty plea after sentencing. Although the effect of a plea of nolo contendere is equivalent to a plea of guilty, the import of the pleas is not the same. In pleading nolo contendere; the defendant does not admit his guilt, but merely consents to being punished as if he were guilty. *Commonwealth v. Boyd,* 221 Pa.Super. 371, 292 A.2d 434, 435 (1972). *See also North Carolina v. Alford,* 400 U.S. 25, 35 n. 8, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Eisenberg v. Commonwealth, Dept. of Public Welfare,* 512 Pa. 181, 516 A.2d 333, 335 (1986).

In this case, neither the written nor oral colloquy defined nolo contendere or explained the significance of such a plea to Appellant. Indeed, it is unclear whether Appellant ever realized that there was any distinction between pleading guilty or pleading nolo contendere.[1] For this reason alone, a manifest injustice occurred requiring the grant of Appellant's request

1. A plea of *nolo contendere* has the exact same effect as a plea of guilty. *Commonwealth v. Nelson,* 446 Pa.Super. 240, 666 A.2d 714, 717 (1995), *allocatur denied,* 544 Pa. 605, 674 A.2d 1069 (Pa.1996). Thus, whether a defendant pleads guilty or *nolo contendere,* the defendant is agreeing to forgo a trial, be convicted of a crime, and be sentenced accordingly.

to withdraw his plea. Accordingly, I find that there was no reason for the majority to consider counsel's conduct in analyzing whether a manifest injustice occurred in this case.

SAYLOR, Justice, Dissenting.

In this case, Appellant does not contend that his plea was unknowing, unintelligent, or entered without an understanding of the nature of the charges or the terms of the plea agreement. Rather, Appellant claims that his plea was involuntary, specifically, his will was overborne by counsel's purported threat to withdraw from the case and refer Appellant to the public defenders office for further representation. Thus, although I agree with the majority that the plea proceeding, including the written plea colloquy, failed to comply with the requirements of Rule of Criminal Procedure 319(A)(3), (B)(2), I do not view these defects as critical in light of the essential allegation.[1]

In determining whether a plea has been voluntarily entered, an examination of the totality of the circumstances is warranted. *See Commonwealth v. Allen,* 557 Pa. 135, 146, 732 A.2d 582, 588–89 (1999). Here, Appellant faced a number of serious offenses, namely, kidnapping, rape, sexual assault, simple assault (three counts), recklessly endangering another person (three counts), terroristic threats, unlawful restraint, false imprisonment, and resisting arrest. The plea agreement entered into by Appellant provided, *inter alia,* for the dismissal of the most serious charges, kidnapping and rape, and a term of imprisonment of three to six years.[2] Additionally, counsel

The practical difference between the pleas is that a defendant need not admit to any guilt in a *nolo contendere* plea.

1. In this regard, the fact that the written colloquy erroneously indicated that Appellant was entering a guilty plea, as opposed to a plea of *nolo contendere*, is inconsequential, since a plea of *nolo contendere* is treated the same as a guilty plea, *see generally Commonwealth v. Stork,* 737 A.2d 789, 790 (Pa.Super.1999), *appeal denied,* 564 Pa. 709, 764 A.2d 1068 (2000); moreover, counsel identified and corrected on the record certain of the errors in the written colloquy. In addition, the plea form clearly indicates Appellant's entry of a *nolo contendere* plea.

2. The Commonwealth also agreed to dismiss two counts of simple assault, two counts of reckless endangerment, and the resisting arrest charge.

testified that she recommended accepting the plea agreement based upon her assessment that the evidence against Appellant was compelling, and that he would have been convicted of a number of offenses and, as a result, faced a substantially greater prison term. It is also noteworthy that, prior to making such recommendation, counsel had conducted an extensive interview of the victim, and had met with Appellant on numerous occasions to discuss the evidence and the plea agreement. Given such circumstances, Appellant's acceptance of the agreement is a " 'strong indicator' of the voluntariness of the plea." *Commonwealth v. Shaffer,* 498 Pa. 342, 352, 446 A.2d 591, 596 (1982) (citations omitted).

Moreover, although this Court has held that an attorney's threat to abandon a client may constitute grounds to withdraw a plea, *see Commonwealth v. Forbes,* 450 Pa. 185, 190–91, 299 A.2d 268, 271–72 (1973), the circumstances surrounding Appellant's plea are substantially different from those that were at issue in *Forbes.* There, the defendant was a visibly upset and confused 16 year old juvenile, and counsel threatened to withdraw from the case without any indication that new counsel could be appointed. *See id.* at 188, 190, 299 A.2d at 270, 271. Of additional import, the defendant in *Forbes* sought to withdraw his plea prior to sentence. *See id.* at 190, 299 A.2d at 271. Here, Appellant is an adult, there was no suggestion that he would have to proceed without counsel, and the request to withdraw his plea is governed by the more stringent post-sentence standard. Furthermore, subsequent to jury selection Appellant advised counsel of his intention to accept the proposed plea agreement. As a result, counsel reasonably relied upon such indication and did not continue to prepare the case for trial. When Appellant changed his mind on the day set for entering his plea, counsel, understandably, told Appellant that her ability to prepare for trial was compromised by his unexpected reversal. Nevertheless, counsel advised Appellant that he did not have to enter a plea and, during the hearing to withdraw the plea, testified that she would have been prepared to proceed to trial if necessary. Viewed in this context, counsel's frustration with Appellant's

indecision, as reflected in her statement that she might not be able to continue to represent him, did not render his plea involuntary.

On this record, therefore, I would conclude that Appellant has not demonstrated prejudice on the order of manifest injustice, particularly since the plea court credited counsel's testimony concerning the voluntariness of the plea. *See Commonwealth v. Waddy*, 463 Pa. 426, 430, 345 A.2d 179, 181 (1975) (plurality opinion).

Justice CASTILLE and Justice NEWMAN join this dissenting opinion.