J-A07045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :             PENNSYLVANIA
                                  :
                  v.                   :
                                  :
                                  :
JOSE MIGUEL MALDONADO       :
                                  :
             Appellant         :    No. 1612 EDA 2018

Appeal from the Judgment of Sentence December 12, 2017
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001508-2017,
CP-45-CR-0001782-2016

BEFORE: OLSON, J., DUBOW, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:             **FILED APRIL 08, 2019**

Appellant Jose Miguel Maldonado appeals from the judgment of sentence entered in the Court of Common Pleas of Monroe County on December 12, 2017, as made final by the denial of his post sentence motion and his motion to withdraw guilty pleas on May 21, 2018, at which time he was sentenced to an aggregate term of thirteen and one half (13 ½) years to thirty-two (32) years in prison following his guilty pleas to one count of criminal attempt to commit homicide and one count of aggravated assault.[1] We affirm.

Appellant's pleas arose following his attack of the victim at which time Appellant and his codefendant hit the victim with a rock, repeatedly stabbed him with a knife until it broke apart, and continued the attack with the broken

---

[1] In light of the Commonwealth's motion, and with the concurrence of Appellant, all other charges against him brought at two separate dockets were nolle prossed.

---

knife shaft. N.T. Hearing, 5/17/18, at 10. While he was incarcerated on that matter, Appellant was involved in an incident where he assaulted several prison guards at the Monroe County Correctional Facility which resulted in felony aggravated assault charges. *Id*. at 10-11. The trial court detailed the relevant facts and procedural history of these matters as follows:

> In the case docketed to No. 1782 CR 2016, [Appellant] was charged with Attempted Homicide, two counts of Robbery, Aggravated Assault, Theft, Receiving Stolen Property, and conspiracy to commit those crimes. [2] The charges were based upon a brutal, unprovoked assault and robbery in which [Appellant] stabbed the victim multiple times with a knife, hit him several times with a rock, and, along with his codefendant, stole the victim's backpack. Although [Appellant] was 17 at the time of the incident, the nature and circumstances of the crime, together with the use of a weapon, caused [Appellant] to be charged as an adult and incarcerated in the Monroe County Correctional Facility. Through [c]ounsel, [Appellant] filed a motion to decertify and transfer the case to juvenile court.
>
> While in jail, [Appellant] assaulted three correctional officers. As a result, he was charged in case No. 1508 Criminal 2017 with multiple counts of Aggravated Assault, Simple Assault, Recklessly Endangering Another Person, and Resisting Arrest.[3] Since a weapon was not used, [Appellant] was initially charged as a juvenile. However, due to the nature of the attack and pendency of the prior direct file Attempted Homicide case, the Commonwealth filed a motion to certify the case to criminal court.
>
> [Appellant's] Decertification Motion and the Commonwealth's Certification Motion were decided at a hearing convened on June 27, 2017. During the hearing, the parties stipulated to salient facts. [Appellant] withdrew his Decertification Motion. In addition, [Appellant] waived his right to challenge transfer of the juvenile matter to adult criminal court and agreed to certification. At the end of the hearing, after a brief colloquy, we issued orders accepting [Appellant's] withdrawal of the

---

2 18 Pa.C.S.A. §§ 901(a); 3701(a)(1)(ii); 2702(a)(1); 3921(a); 3925(a); 903, respectively.
3 18 Pa.C.S.A. §§ 2702(a)(3); 2701(a)(1); 2705(a); 5104, respectively.

Decertification Motion, certifying the jail assault case to criminal court, and scheduling both matters for trial.

During the certification/decertification hearing, one or both of the attorneys stated that closed plea negotiations were ongoing. The negotiations were conditioned on [Appellant] giving a proffer. Counsel anticipated asking for approval of a closed plea agreement once negotiations were finalized and [Appellant] gave his proffer. However, as counsel for both parties acknowledged during the proceedings on [Appellant's] post sentence motions, the parties never asked for approval of a closed plea.

As a result of motions filed by the Commonwealth in Case No. 1782, the trial listings for both cases were continued. Status conferences were held during the time when the Commonwealth's motions were pending. During at least some of those conferences, plea negotiations were generally discussed. At some point, the [c]ourt was advised that the Commonwealth was not satisfied with the proffer given by [Appellant] and, therefore, had withdrawn its closed plea offer.

Ultimately, case No. 1508 was listed for trial in October of 2017 and case No. 1782 was to be tried in November. However, neither matter went to trial because [Appellant] pled guilty in both cases. Specifically:

On October 3, 2017, [Appellant] entered a counseled guilty plea in case No. 1508 to one count of Aggravated Assault, as a felony of the second degree. The plea was entered on a written guilty plea form of the type traditionally used in this jurisdiction. The form was prepared by counsel for [Appellant] and was signed by [Appellant], his attorney, and the assigned assistant district attorney. (Guilty Plea Colloquy, filed October 4, 2017). Of direct significance to the issue raised by [Appellant] on appeal, the form contains provisions which clearly and unambiguously state that there are no sentencing agreements and that the only thing the Commonwealth agreed to as part of the plea was to nolle pros the remaining charges. Specifically, Paragraphs 4 and 8 provide:

> 4. PROSECUTION AGREEMENT(S). In return for this guilty plea, the Commonwealth has agreed to the following things: Nolle pros remaining charges.
> * * *
> 8. NO SENTENCING AGREEMENT. I acknowledge that there are no agreements for sentencing except as may be set forth in paragraph 4 above. I understand that any agreement for sentencing is not binding on the [c]ourt and I have not been guaranteed a specific sentence in

- 3 -

exchange for this plea. The Court retains the power to decide my sentence.

(*Id*.). The form also provides that:

11. I KNOW WHAT I AM DOING AND IT IS VOLUNTARY. I am not mentally disabled or under the influence of any drugs or alcohol. I am not suffering from any disability which affects my own free will, and am free of duress. I am giving up my trial rights knowingly, voluntarily and intelligently.

\* \* \*

13. I HAVE CONFERRED WITH MY ATTORNEY BEFORE THIS PLEA. I have had an opportunity to discuss this plea agreement with my attorney, with whom I am satisfied.

\* \* \*

PLEA OF GUILTY

I SWEAR AND AFFIRM THAT I HAVE READ THIS DOCUMENT IN ITS ENTIRETY OR HAD IT EXPLAINED TO ME, UNDERSTAND IT COMPLETELY, AND BELIEVE THIS PLEA IS IN MY BEST INTEREST. BY SIGNATURE BELOW I ENTER A PLEA OF GUILTY TO THE OFFENSE(S) SPECIFIED IN PARAGRAPH 1 OF THIS PLEA COLLOQUY FORM, WHICH IS FINAL WHEN ACCEPTED BY THE COURT.

(*Id*.). Finally, the form includes the following attorney certification:

DEFENSE ATTORNEY CERTIFICATION. I certify with this [Appellant] that: (1) I have explained this plea agreement and the [Appellant's] rights to the [Appellant]; (2) he/she wishes to plead guilty; (3) I have discussed the facts and the law of this case with the [Appellant]; and (4) I believe the [Appellant] understands the consequences of pleading guilty.

(*Id*.).

The written guilty plea form was supplemented by an oral colloquy administered by the [c]ourt. [Appellant] was

- 4 -

accompanied by his attorney while the colloquy was given. (N.T., 10/3/2017, pp. 2 - 10).

On October 18, 2017, [Appellant] entered a counseled guilty plea in case No. 1782 to Attempted Homicide. That plea was also entered on a traditional guilty plea form that was prepared by counsel for [Appellant]. The form contained all of the language quoted above, was signed by [Appellant], his attorney, and the assigned assistant district attorney, and was supplemented by an oral colloquy administered by the [c]ourt. [Appellant] was accompanied by his attorney when the plea form was tendered and the colloquy was administered. As with the plea in case No. 1508, there were no sentencing agreements and the only thing the Commonwealth agreed to do as part of the plea was to nolle pros the remaining charges. (Guilty Plea Colloquy, filed October 19, 2017; N.T., 4/18/2017, pp. 2-11).

A sentencing hearing was convened on December 12, 2017. [Appellant] did not ask for a specific sentence. Through his attorney, [Appellant] asked for a sentence with a minimum at the low end of the standard range (a range from 8 ½ to 20 years) of the sentencing guidelines "with an appropriate tail" (maximum sentence) on the Attempted Homicide conviction, and a concurrent sentence on the Aggravated Assault conviction. (N.T., 12/12/2017, pp. 3-5).

The Commonwealth, represented by a new assistant district attorney (ADA) because the ADA who had handled both cases up through the guilty pleas was out on extended leave, asked for a sentence of 20 to 40 years for Attempted Homicide, a sentence that would at once be the top of the standard range and the statutory maximum, and a consecutive sentence of 2 to 4 years for Aggravated Assault. (N.T., 12/12/2017, pp. 8-10). At that point, counsel for [Appellant] articulated his belief that the sentence requested by the Commonwealth was contrary to what had been discussed with the original ADA and what [Appellant] understood would be recommended at the time he pled guilty. A lengthy discussion ensued. (N.T., 12/12/2017, pp. 10-18). Defense counsel asserted that the Commonwealth had not lived up to its agreement. However, his position was not entirely clear or consistent. At times, he indicated that his discussions with the original ADA had centered on a sentence at the "bottom" of the standard range, or even the mitigated range, but he also said that after the proffer was found deficient the original ADA at one point discussed a sentence in the "lower end" of the standard range and at another mentioned a minimum sentence of 10 years as a starting point with the [c]ourt to decide the ultimate sentence.

- 5 -

The assistant ADA pointed out that no agreement including such sentencing terms was ever consummated. Defense counsel agreed with, or at least did not dispute, the recollection of the undersigned that no closed plea or specific sentence was ever presented to or approved by the [c]ourt. He also acknowledged that [Appellant] had entered open guilty pleas and that the pleas were not contingent on the Commonwealth either recommending a particular sentence or agreeing that it would not contest a particular sentence to be requested by [Appellant]. (*Id*.).

At the conclusion of the hearing, [Appellant] was sentenced in case 1782 to incarceration of 12 1/2 to 30 years on the Attempted Homicide conviction and in case No. 1508 to a consecutive period of incarceration of 1 to 2 years on the Aggravated Assault conviction. The individual and aggregate sentences are standard range sentences.

Subsequently, [Appellant] filed timely post-sentence motions asking us to reconsider the sentences. [Appellant] alleged that, at the time his pleas were entered, "a verbal agreement was reached under which the Commonwealth would seek a sentence in the range of ten (10) years' incarceration and the [Appellant] would ask for the statutory minimum, all in light of the [Appellant's] mental health issues, developmental delays, and age at the time of the underlying offense." [Appellant] averred that "the [c]ourt would have been disposed to a lesser sentence had the Commonwealth followed its representations made during plea negotiations;" asserted his belief that, when the original ADA returned from leave, the Commonwealth would confirm that agreement; and asked that a lower aggregate minimum sentence be imposed after the agreement was confirmed. ([Appellant's] Motions for Reconsideration of Sentence, filed December 21, 2017, ¶¶ 3-9).

A hearing was convened on the motion. However, the hearing was recessed to a later date because the original ADA was still on leave and, for whatever reasons, had not been contacted by the ADA who appeared. The continuation of the hearing likewise had to be recessed when the original ADA was unavailable.

Immediately prior to the continuation date of the hearing, [Appellant] filed motions seeking leave to withdraw the guilty pleas which, in substance, largely echoed his post sentence motions. The Commonwealth filed answers alleging that there was no basis on which to allow withdrawal.

A hearing was ultimately convened on April 18, 2018. The original ADA appeared. During the hearing, [Appellant's] post

sentence motions and his motions to withdraw guilty pleas were heard.

At the beginning of the hearing, counsel for [Appellant] appeared to indicate that [Appellant] would not be pursuing his request for reconsideration of the sentences, but would be pursuing the motions to withdraw guilty pleas. Counsel informed us that, after speaking with the original ADA, he did not feel that he could "push for a motion for reconsideration on [the] basis [originally stated] having finally had the chance to talk with her which is fine. She's doing what she needs to do. At this point however that is why we came forward with the motion to withdraw. . . ." (N.T., 4/19/2018, p. 5). Later in the hearing, however, it appeared that both sets of motions were being pursued.

Substantively, counsel presented oral arguments and [Appellant] testified. At the conclusion of the hearing, we left the record open for a set period of time so that the parties would have the opportunity to request transcripts and [Appellant] could submit psychological reports that had been prepared during the certification and decertification proceedings. We also gave both parties the opportunity, but not the requirement, to file briefs. Subsequently, the Commonwealth requested transcription of the two guilty plea hearings and the sentencing hearing, and [Appellant] asked for the transcript form April 19, 2018. All requested transcripts were prepared and filed.[2] The Commonwealth elected to file a brief opposing Defendant's motions to with draw guilty pleas; [Appellant] opted not to file a brief. [Appellant] did, however, file the referenced psychological reports.

On May 17, 2018 we convened a hearing to announce our decision. During the hearing, we announced our rulings and stated our reasons for denying all of [Appellant's] motions on the record. In addition, we handed out a Hearing Addendum, a copy of which is attached to the announcement hearing transcript, which comprehensively summarized the law we applied in sentencing [Appellant] and in ruling on the motions. (N.T., 5/17/2018, pp. 2-30 and Addendum). We incorporate our on-record statements and the Addendum into this opinion by reference. For convenience and ease of reference, the announcement hearing transcript, including the Addendum, is attached as Appendix A.

_____

[1] By the time the hearing convened, the cases were approaching deemed denial status on the post sentence motions. Accordingly,

a relatively short post-hearing submission deadline was set. (See N.T., 4/19/2018, pp. 29-32).

[2] At several points, including at prior proceedings which no party asked to be transcribed, the [c]ourt suggested that the parties may wish to obtain transcripts of proceedings at which, among other things, the initial closed plea discussions, [Appellant's] proffer, the withdrawal of the Commonwealth's plea offer, and the open nature of the pleas that were taken were mentioned. (See, e.g., N.T., 5/17/2018, p. 19; N.T., 4/19/2018. Pp. 37-38; N.T., 12/12/2017, p. 17). However, neither party asked for transcription of any proceeding until 119 days after [Appellant's] post -sentence motions were filed, and then the only transcripts requested were those listed in the body of this opinion. The expanded procedural history recited in this opinion is intended to provide both context for our decision and relevant additional background that was either not mentioned during the final hearings on [Appellant's] motions or was mentioned but due to the absence of transcripts does not otherwise appear of record.

Trial Court Opinion, filed 7/16/18, at 1-9.

On May 30, 2018, Appellant filed his notice of appeal with this Court.[4]

The next day, the trial court entered its Order directing Appellant to file his concise statement of the errors complained of on appeal, and Appellant complied on June 21, 2018, at which time he presented the following issue:

1. The trial court erred and abused its discretion by refusing to allow [Appellant] to withdraw his guilty plea after it was made clear on the record that his plea was not knowingly and intelligently made.

---

[4] In **Commonwealth v. Walker**, ____ Pa. _____, 185 A.3d 969 (2018), our Supreme Court instructed that the failure to file separate notices of appeal from an order resolving issues arising on more than one lower court docket will result in quashal of the appeal. **Id.** at 977. However, that mandate applies only to appeals filed after the date of the **Walker** decision, *i.e.*, June 1, 2018.

In his brief, Appellant presents the following issue for this Court's review:

> A.    Whether the court abused its discretion in denying [Appellant's] request to withdraw his guilty plea when [Appellant] asserted his plea was unknowing, uncounseled and not made voluntarily?

Brief for Appellant at 5.[5]

Appellant's principal complaint is that his pleas were based upon a plea bargain with the Commonwealth which ultimately was not delivered to him. Appellant avers that "[f]aced with a State Correctional sentence in excess of ten years, [Appellant] would not have entered his guilty plea. He was expecting a short front and long tail, thereby giving him a chance to prove himself and earn earlier release. But this wasn't the case, as he believed he was being offered a plea that did not include the realistic possibility of so much time." Appellant's Brief at 14. Appellant reasons that "[w]here, as here, it is evident that the defendant does not understand the basic tenants of the plea, such plea should not be taken and when such misunderstanding is discovered, the plea can be withdrawn." *Id*. at 15. Appellant concludes that "[h]ere [he]

---

[5] The Commonwealth initially had failed to file a timely brief with this Court. On February 22, 2019, the Commonwealth filed its Motion to Submit the Attached Brief *Nunc Pro Tunc* wherein it requested that this Court accept the attached brief *nunc pro tunc*. On February 25, 2019, we filed an Order granting the Commonwealth's Motion and permitting it to present Oral Argument on March 13, 2019. Thereafter, on February 27, 2019, Appellant filed a Motion for a Continuance of Oral Argument. On March 1, 2019, we denied Appellant's Motion.

believed he made one plea of guilty but was sentenced pursuant to another. That is a material change which should have been considered by the court either prior to a sentence being rendered, or as a factor to allow the plea to be withdrawn. The failure of the Sentencing Court to do so is reversible error such that [Appellant] should have the matter remanded to allow for the withdrawal of the plea and proceed to trial." ***Id***. at 16.

This Court delineated the principles that govern a defendant's request to withdraw his or her guilty plea following the imposition or sentence as follows:

> [A]fter the court has imposed a sentence, a defendant can withdraw his guilty plea "only where necessary to correct a manifest injustice." ***Commonwealth v. Starr***, 450 Pa. 485, 301 A.2d 592, 595 (1973). "[P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage the entry of guilty pleas as sentencing-testing devices." ***Commonwealth v. Kelly***, 5 A.3d 370, 377 (Pa.Super. 2010), ***appeal denied***, 613 Pa. 643, 32 A.3d 1276 (2011).

> ***

> To be valid [under the "manifest injustice" standard], a guilty plea must be knowingly, voluntarily and intelligently entered. ***Commonwealth v. Pollard***, 832 A.2d 517, 522 (Pa.Super. 2003). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." ***Commonwealth v. Gunter***, 565 Pa. 79, 771 A.2d 767, 771 (2001). The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. ***Commonwealth v. Hodges***, 789 A.2d 764, 765 (Pa.Super. 2002) (*citing* Pa.R.Crim.P. 590). Under Rule 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and

the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. ***Commonwealth v. Watson***, 835 A.2d 786 (Pa.Super. 2003). The reviewing [c]ourt will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. ***Commonwealth v. Muhammad***, 794 A.2d 378 (Pa.Super. 2002). Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. ***Pollard***, ***supra.*** ***Commonwealth v. Prendes***, 97 A.3d 337, 351–54 (Pa.Super. 2014) (parallel citations omitted).

***Commonwealth v. Kpou***, 153 A.3d 1020, 1022–24 (Pa.Super. 2016).

At the outset, we note that while Appellant argues he should have been permitted to withdraw his plea after sentencing in light of his belief he was to receive a lesser sentence than that entered by the trial court, our review of the guilty plea colloquy and the entire record reveals he never requested to do so. To the contrary, aside from his bald assertions as to what he expected and/or believed his sentence would be, Appellant has failed to submit credible evidence to prove the validity of this claim. He offers no evidence to contradict the lengthy plea colloquy the trial court had conducted and the responses he made to the court during the plea hearings at which time he indicated he understood the nature of the proceedings and clearly articulated his remorse for his actions to the court.

In addition, at the May 17, 2018, hearing on Appellant's post-sentence motion, the trial court stressed that of significant importance was the fact that the guilty plea colloquy forms Appellant had signed in both matters specifically

indicated that they were open pleas with no agreement as to sentencing. The court also stated that each form clarified the only agreement between the parties was that the Commonwealth would nolle pros the remaining charges in the matters. N.T. Hearing, 5/17/19, at 13-15, 17-18, 20, 24-25.

Moreover, there was no evidence submitted by either party during the plea hearings which would indicate that the Commonwealth was bound by a particular sentence at the time of sentencing. Indeed, at the October 3, 2017, plea hearing Appellant indicated he understood that "if [he] plead[s] guilty today, even if [he] ha[d] a very valid objection or challenge, [he is] giving it up; [he's] waiving it and [he] cannot complain about it in the future. N.T. 10/3/17, at 6. In addition, at the October 17, 2017, plea hearing Appellant responded with others in unison "Yes" in response to the following:

> [the trial court] is taking an open plea today which means you plead guilty today, you come back on January 16, 2018, January 16, 2018, and you are sentenced then and at that time I am not limited to anything that you have talked about with the Commonwealth. The only limitations that I have are the maximum penalties that we've already talked about.

N.T. Plea Hearing, 10/17/17, at 8.

When the trial court addressed Appellant's case specifically, the following exchange occurred:

> THE COURT: [Appellant]. It says here that on or about June 18, 2016, in Mount Pocono you attacked Kyle Higgins with a rock and/or a knife multiple times in a way that showed indifference and criminal negligence to his life. Did you do that?
> [Appellant]: Yes sir.
> THE COURT: And do you wish to plead guilty?
> [Appellant] Yes sir.

- 12 -

>    THE COURT: Then I'll accept your guilty plea to Count 1, attempted homicide, and it's H1 for the Order.

*Id*. at 10. Neither Appellant nor his counsel indicated at this time or previously a belief that the Commonwealth would be bound by a particular sentence.

Furthermore, the trial court sentenced Appellant over two months after he pled guilty; Appellant did not seek to withdraw his guilty plea during those two months nor did he seek to withdraw his guilty plea at the sentencing hearing. At that December 12, 2017, sentencing hearing, after counsel's discussion regarding the issue of the Commonwealth's and prior defense counsel's alleged positions on Appellant's sentence, the trial court stated the following on the record:

>    The [c]ourt did not accept this as a closed plea and at no time did the [c]ourt agree to a particular sentence or to be bound by any discussions between you and the Commonwealth, whether it was directly or through your attorney and the assistant district attorney who handled the case at the time. I know that those discussions occurred many times about different subjects over a long period of time but it was never presented to the [c]ourt in that context.
>    And so in all senses regardless of whatever conversations did not take place this was not presented nor was it accepted as a closed plea.
>    However the basis for [defense counsel's] discussions with the Commonwealth and his argument today [is] very well known to the [c]ourt.
>    So I have, and as you can tell from my long discussion here today, will continue to take those circumstances and considerations in advisement in imposing sentence.
>    For the reasons set forth in the pre-sentence investigation report, for those I've articulated today, and those based on the record I'm going to issue the following Order. . . .

N.T. Sentencing Hearing, 12/12/17, at 29-30.

The trial court clarified that it was well aware of defense counsel's position with regard to prior conversations with the Commonwealth concerning Appellant's sentence and considered the same when fashioning its sentence.

Despite this clear articulation, Appellant never moved to withdraw his guilty plea prior to the trial court's imposition of a standard-range sentence. Instead, Appellant waited nearly four months after the court imposed his sentence to file his motion to withdraw his guilty pleas at which time he claimed his sentence was a higher one than he had anticipated. This is so despite the fact that, as the trial court noted, "the pleas were not last minute deals reached between the parties. Rather, [Appellant] had ample opportunity to discuss both pleas, which were entered on separate days, with his attorney . . . . He did not at any time, by words, gestures, or body language, demonstrate any level of confusion or understanding." Trial Court Opinion, filed 7/16/18, at 12-13.

Appellant's actions indicate he merely was unhappy with the sentence he received and is attempting to challenge the validity of his guilty plea as a means to attack the judgment of sentence. As such, Appellant has failed to offer credible evidence to satisfy his high burden of proving that a manifest injustice occurred in this case. *See Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa.Super. 2002) (stating that a defendant's disappointment in the sentence actually imposed does not represent manifest injustice

- 14 -

warranting the post-sentence withdrawal of a guilty plea). Therefore, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to withdraw his guilty plea.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/19