**Commonwealth v. Sarsfield**

*Brian Scanlon,* for Commonwealth.
*Sharif Abaza,* for defendant.

CEPPARULO, *J.,* August 1, 2011—

## I. INTRODUCTION

Defendant Thomas Sarsfield appeals to the Superior Court of Pennsylvania from the denial of his pro se motion to withdraw his nolo contendere pleas. We file this opinion pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(a).

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the commission of three residential burglaries in Warrington, Langhorne, and Bensalem, Pennsylvania by defendant and a co-defendant, Jerry Lee Baker.[1]

On July 31, 2010, Warrington Township police responded to 46 East Kulp Road in Warrington, Bucks County, Pennsylvania for a report of a residential burglary. (Prelim. Hr'g N.T. 20.)[2] Resident Jacqueline

1. Baker was charged in Bucks County Criminal Information Nu - bers 0672-2010, 7542-2010, 7505-2010, and 6872-2010.

2. For ease of reference, notes of testimony from the preliminary hearing held on December 15, 2010 is referred to "Prelim. Hr'g N.T."

Springler told police that she had received a phone call from a neighbor who informed her that a white Mitsubishi Gallant was parked in her driveway. (Prelim. Hr'g N.T. 21; see *id.* at 34.) Upon returning home, Ms. Springlier saw footprints and pry marks on the inner garage door and realized that a flat screen television, jewelry, power tools, and a set of golf clubs were missing from her home. (Prelim. Hr'g N.T. 21.)

On August 1, 2010, William Erickson returned from a vacation to his residence located at 3713 Hickory Lane, Bensalem, Bucks County, Pennsylvania, to find that the door had been kicked in and his home had been ransacked. (Prelim. Hr'g N.T. 7-9.) When Bensalem police responded, Mr. Erickson reported that jewelry and his off-white Mitsubishi Gallant, with a tag number of EKH-5820, were missing. (Prelim. Hr'g N.T. 11.)

On August 2, 2010, fifteen-year-old Tyler Edwards ("Tyler") was alone in his residence located at 200 National Avenue, Langhorne, Bucks County Pennsylvania. (Prelim. Hr'g N.T. 38-39.) While in his bedroom, Tyler heard noises and then saw a person, who was later identified as matching the description of defendant, in the master bedroom. (Prelim. Hr'g N.T. 39.) Because he did not recognize defendant, Tyler attempted to hide by silently closing his bedroom door. (*Id.*) A second man, later identified as the co-defendant, Jerry Lee Baker, opened Tyler's bedroom door, saw Tyler, and yelled "we gotta go" before fleeing with defendant to a car parked in the driveway of the home. (Prelim. Hr'g N.T. 48, 39.) A neighbor informed Langhorne Borough police that he observed a white male flee from the residence into a white

Mitsubishi and drive off at a high rate of speed. (Crim. Info. No. 7666-2010, Aff. of Probable Cause, 7-8.) Tyler's mother, Lisa Edwards, and stepfather, Stephen Garris, returned to the residence and informed police that jewelry and prescription drugs were missing. (*Id.*)

On August 4, 2010, Middletown Township police responded to a report of a suspicious vehicle in Levittown, Bucks County, Pennsylvania. (Crim. Info. No. 7506-2010, Aff. of Probable Cause, 5.) The police found that the vehicle, a 2001 white Mitsubishi Gallant with the tag number EKH-5820, had been reported as stolen. (*Id.*) Defendant and Baker were observed inside the vehicle by police, who after arresting defendant and Baker, spotted several syringes, one containing blood and the other containing heroin, and a small plastic bag with drug residue, later confirmed to be marijuana. (Plea Colloquy N.T. 12.)[3] Upon the execution of a search warrant, police also recovered items which had been reported stolen by Jacqueline Springler, William Garrison, Lisa Edwards, and Stephen Garris. (See Plea Colloquy N.T. 11.)

Defendant was charged in four criminal informations. For the break-in at William Erickson's house, defendant was charged with burglary,[4] theft by unlawful taking,[5] and receiving stolen property.[6] (Crim. Info. No. 7506-2010.) For the break-in at Tyler Edwards's house, defendant

---

3. For ease of reference the Notes of Testimony from the colloquy conducted on March 14, 2011 shall be referred to as "Plea Colloquy N.T."
4. 18 Pa.C.S. § 3502(a).
5. 18 Pa.C.S. § 3921(a).
6. 18 Pa.C.S. § 3925(a).

was charged with burglary, criminal trespass,[7] criminal mischief,[8] two counts of theft by unlawful taking, and conspiracy to commit the foregoing offenses.[9] (Crim. Info. No. 7666-2010.) For the break-in at Jacqueline Springler's house, defendant was charged with burglary, theft by unlawful taking, and criminal trespass. (Crim. Info. No. 7543-2010.) Finally, defendant was charged with possession of a controlled substance[10] and possession of drug paraphernalia.[11] (Crim. Info. No. 6873-2010.)

On March 14, 2011, defendant entered pleas of nolo contendere to the burglaries in Bensalem, Langhorne, and Warrington and a plea of guilty to the possession charges.

During the counseled colloquy, defendant testified he understood that a nolo contendere plea would be treated the same as a guilty plea for purposes of sentencing. (Plea Colloquy N.T.3.) Defendant also stated he understood that he had a right to a jury trial in which the Commonwealth was required to prove his guilt beyond a reasonable doubt and in which defendant was allowed, but not required, to present evidence in his defense. (Plea Colloquy N.T. 4.) Defendant then affirmed he was waiving his right to file pretrial motions and to have a jury determine his guilt or innocence. (*Id.*)

Next, we explained the penalties associated with the charged offenses to allow defendant to make an informed decision about entering a guilty or a nolo contendere

---

7. 18 Pa.C.S. §3503(a)(1).
8. 18 Pa.C.S. § 3304(a)(5).
9. 18 Pa.C.S. §§ 3502(a), 3921(a), 3503(a)(1), 3304(a)(5).
10. 35 Pa.C.S. §780-113(a)(16).
11. 35 Pa.C.S. §780-113(a)(32).

plea. (Plea Colloquy N.T. 5.) Defendant stated that he understood the following: (1) his drug offense was an upgraded misdemeanor which carried a maximum penalty of one year's incarceration and a $5,000 fine, (2) his first-degree felonies carried a maximum penalty of twenty years' incarceration and a $25,000.00 fine, (3) conspiracy, when charged as a second-degree felony, carried a maximum penalty of ten (10) years' incarceration and a $25,000 fine and, when charged as a third-degree felony, carried a maximum penalty of seven years' incarceration and a $15,000 fine. (Plea Colloquy N.T 5-6.)

Defendant also testified that: (1) he was not under the influence of drugs, alcohol, or medication that impaired his ability to understand his plea; (2) no one forced or threatened him to coerce him to enter a plea; (3) he was pleading guilty to possession of drug paraphernalia because he was guilty of that charge; (4) he was pleading nolo contendere on the other charges because he could not contest the Commonwealth's evidence; (5) he understood he could be sentenced consecutively or concurrently; and (6) he understood this court was not bound to accept a negotiated guilty plea and, if we did not, he could then have the right to withdraw his guilty plea. (Plea Colloquy N.T. 6-7.) Defendant also affirmed that he understood his guilty plea had only a limited right of appeal and that there was a ten-day period after the imposition of his sentence to file post-verdict motions and a thirty-day period after the imposition of his sentence to file an appeal. (Plea Colloquy N.T. 7-8.)

The Commonwealth then provided the factual basis for the plea, as noted above. (Plea Colloquy N.T. 8-12.)

Defendant testified that he remembered being arrested in the white Mitsubishi. (Plea Colloquy N.T. 13.) Defendant testified that, because he was under the influence of heroin while he committed the burglaries and could not remember much of what haspecifically in each home, he decided to enter into a partial nolo contendere plea. (*Id.*) We next reviewed with defendant his extensive criminal history. (Plea Colloquy N.T. 13-16.)[12]

Next, defendant testified that, while committing the burglaries, he and his co-defendant were "basically on a heroin binge" and that he had very little, if any, recollection of the crimes. (Plea Colloquy N.T. 17-18.) Defendant testified that he had been prepared to go to trial on March 14, 2011 but decided to enter pleas upon discovering his co-defendant was prepared to testify against him. (Plea Colloquy N.T. 18.) Furthermore, defendant testified that he had reviewed the standard range guidelines with defense counsel and that he understood the sentencing

12. Defendant had multiple juvenile adjudications. Defendant was charged with (1) driving under the influence in 1990, (2) escape in 1991, (3) possession of drug paraphernalia in 1992, (4) escape in 1992, (5) criminal conspiracy to commit theft by unlawful taking in 1992, and (6) robbery in 1993.

Defendant also had multiple contacts with the criminal justice system as an adult. In January 1994, defendant pled guilty to simple assault, and in April 1994, he pled guilty to receiving stolen property. In November 1994, defendant pled guilty to theft by unlawful taking, and in a separate case, to burglary. In February 1996, defendant was found guilty of receiving stolen property. In January 1998, defendant pled guilty to receiving stolen property. In July 1999, defendant pled guilty to retail theft. In August 2000, defendant pled guilty to unauthorized use of a vehicle. In February 2005, defendant pled guilty to retail theft in two separate cases and also to receiving stolen property and fleeing and eluding in a third case. In January 2007, defendant was found guilty of retail theft, and in September 2007, defendant pled guilty to retail theft. In June, 2008, defendant pled guilty to use and possession of drug paraphernalia.

range he was facing. (*Id.*) Defendant then stated "I would just like to apologize to the court and to the victims and to my family for my actions" and informed the court that he was grateful for being allowed to speak with his mother before deciding to enter pleas. (Plea Colloquy N.T. 19.)

Defendant was sentenced to not less than seven (7), nor more than fourteen (14) years' incarceration for burglary at Tyler Edwards's home in Langhorne, Pennsylvania. Additionally, defendant received not less than three (3), nor more than ten (10) years' incarceration for the burglary of Jacqueline Springler's house in Warrington, Pennsylvania. Defendant also received not less than three (3), nor more than ten (10) years' incarceration for the burglary at William Erickson's house in Bensalem, Pennsylvania. Furthermore, defendant pled guilty to possession of a controlled substance and was sentenced to not less than six (6) months nor more than one (1) year of incarceration. There was no further penalty on the remaining counts. We ordered that defendant's four sentences would run concurrently and include credit from August 4, 2010, the date of defendant's arrest, to March 16, 2011, the date of sentencing.

On March 17, 2011, defendant filed a pro se "Motion To Withdraw Nolo Contendere Plea." In addition to asserting his innocence and that his nolo contendere pleas were not knowing, intelligent, and voluntary, defendant argued that he had felt coerced, frightened, and depressed and that the nolo contendere pleas were the product of an alleged deteriorated physical and mental condition.[13]

---

13. Defendant was represented at the withdrawal of plea hearing by

At the hearing on May 6, 2011, defendant testified that he was not guilty of the crimes charged and that he had not made a knowing and intelligent decision to plead guilty. (Withdrawal Hr'g N.T. 5.)[14] Defendant explained that he was prepared to go to trial but was overwhelmed when he discovered his co-defendant was prepared to testify against him. (*Id.*) Defendant further testified that after being sentenced and again speaking to his family, he knew he did not commit these crimes and that he made the wrong decision to plead and would rather have gone to trial. (*Id.*) Defendant also testified as follows:

> And like there was - there was no pre-sentence or anything done. Before I pled guilty, I was - the impression - I pled nolo contendere to these crimes. It was all in a five-minute period. I was overwhelmed at the time. I didn't have time to prepare. There was no other talks of pleading guilty until the morning this happened, and I wasn't prepared for this, and I was overwhelmed by the fact I didn't even commit the crimes. I would rather have took my chance at trial." (Withdrawal Hr'g N.T. 5-6.)

Defendant however admitted that he remembered this court explaining that a plea of nolo contendere provides for the same sentence as a guilty plea. (Withdrawal Hr'g N.T.

Keith Williams, Esq., who, after the hearing on May 6, 2011, filed the instant appeal and moved to withdraw his appearance. This court appointed W. Craig Penglase, Esq., who subsequently withdrew his appearance due to a conflict of interest caused by Mr. Penglase's representation of co-defendant Baker. Thereafter, we appointed Sharif Abaza, Esq., who is representing defendant on the instant appeal.

14. For ease of reference the Notes of Testimony from the hearing conducted on defendant's motion to withdraw his nolo contendere pleas will be referred to as "Withdrawal Hr'g N.T."

6.) Defendant further admitted that he remembered "in a roundabout way" that he had acknowledged during his plea that he was aware of the Commonwealth's evidence and also that the evidence was sufficient to convict him of the charges and that he possessed no evidence to challenge the charges against him. (*Id.*) Most importantly, defendant acknowledged that we had fully explained to him, in accepting his nolo contendere pleas, that for purposes of a criminal case, a nolo contendere plea was the same as a guilty plea and that defendant would, accordingly, be sentenced on all charges together.

Finally, after reviewing the facts of the case and the sentences imposed, we found defendant's testimony not credible and therefore denied his motion to withdraw his nolo contendere pleas. On May 18, 2011, defendant filed this appeal to the Superior Court.

### III. MATTERS COMPLAINED OF ON APPEAL

Pursuant to this court's order of May 24, 2011, defendant filed his statement of matters complained of on appeal, raising the following issues, verbatim:

1. Was [defendant's] plea "knowingly, voluntarily and intelligently made"?[15]

### IV. ANALYSIS

Defendant's sole assertion on appeal is that he did not

---

15. Although defendant's concise statement is somewhat vague, it is nevertheless abundantly clear from the history of this case and defendant's pro se motion to withdraw his nolo contendere pleas that defendant's complaint is that this court had no basis to deny his motion to withdraw his nolo contendere pleas and we will therefore address this issue.

enter his nolo contendere pleas knowingly, voluntarily, and intelligently. Although this verbatim statement is vague and imprecise, stated another way, defendant asserts (we believe) that this court erred in denying his motion to withdraw nolo contendere pleas because, by alleging that the plea was not entered knowingly, voluntarily, and intelligently, defendant claims prejudice on the order of manifest injustice.

A guilty plea is treated the same as a nolo contendere plea in terms of its effect upon a given case. *Commonwealth v. V.G.*, 9 A.3d 222, 226 (Pa. Super. 2010); *Commonwealth v. Leidig*, 850 A.2d 743, 745 (Pa. Super. 2004). In order to be valid, a guilty plea or a nolo contendere plea must be knowingly, voluntarily, and intelligently entered. See *Commonwealth v. Pollard*, 382 A.2d 517 (Pa. Super. 2003). Although there is no absolute right to withdraw a plea, *Commonwealth v. Muhammad*, 832 A.2d 517, 522 (Pa. Super. 2003), a motion to withdraw plea made prior to sentencing is to be liberally allowed where a defendant offers a "fair and just reason," *Commonwealth v. Gunter*, 565 Pa. 79, 84, 771 A.2d 767, 770 (2001) (citing *Commonwealth v. Forbes*, 450 Pa. 185, 191, 299 A.2d 268, 271 (1973)).

After the imposition of sentence, however, the standard for withdrawal of a plea is much higher and a defendant who wishes to withdraw a plea must show "prejudice on the order of manifest injustice" before the grant of his motion is properly justified." *Commonwealth v. Carpenter*, 555 Pa. 434, 454, 725 A.2d 154, 164 (1999); *Commonwealth v. Muhammad*, 794 A.2d 378, 383 (Pa. Super. 2002). Manifest injustice occurs where a plea was "entered

into involuntarily, unknowingly, or unintelligently." *Muhammad*, 794 A.2d at 383 (citing *Commonwealth v. Stork*, 737 A.2d 789, 790 (Pa. Super. 1999)).

To determine whether a defendant's plea was involuntary, unknowing, and unintelligent, a court examines the guilty plea colloquy and inquires into the following areas: (1) the nature of the charges; (2) the factual basis of the plea; (3) the right to a trial by jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the judge's authority to depart from any recommended sentence. *Muhammad*, 794 A.2d at 383-84; Pa.R.Crim.P. 590 Comment. The adequacy of the plea colloquy and the voluntariness of the resulting plea are evaluated in light of the totality of the circumstances surrounding the entry of that plea. *Id.* Lastly, a defendant who enters a guilty plea is presumed to be aware of what he is doing and bears the burden of proving otherwise. *Pollard*, 832 A.2d at 523.

Here, defendant did not seek to withdraw his nolo contendere pleas until after this court imposed four concurrent sentences and was therefore required to show that his nolo contendere pleas were entered unknowingly, involuntarily, and unintelligently. In making this determination, we first considered the plea colloquy. During the colloquy, defendant testified that he understood he was entitled to a jury trial in which the Commonwealth would need to prove his guilt beyond a reasonable doubt. (See Plea Colloquy N.T. 4.) Defendant stated that he understood that he was entitled to, but not required to present evidence in his defense and that by entering a plea he was waiving his right to a trial. (See *id.*) Furthermore, defendant

testified that he understood the maximum penalties authorized for an ungraded misdemeanor and felonies in the first, second, and third degrees and, additionally, that even though he was charged with offenses including theft, criminal trespass, and criminal mischief, that he could be sentenced only on the burglary and conspiracy offenses. (See Plea Colloquy N.T. 5-6.) Defendant also stated he was aware that he could face either concurrent or consecutive sentences on the possession, burglary, and conspiracy charges. (See Plea Colloquy N.T. 7.)

Additionally, the Commonwealth established the factual basis underlying the charges against defendant, which provided that defendant had entered residential homes without the owners' permission, that jewelry, a television, and other items of value were reported missing from those homes, and that defendant was found in a vehicle which was spotted at all three residences and which, after his arrest, was found to contain items reported missing from the three homes as well as drug paraphernalia. (See Plea Colloquy N.T. 8-12.) At no point during the plea colloquy, even after the Commonwealth's recitation of the facts, did defendant contest any of the underlying facts. (See Plea Colloquy N.T. 13.) Defendant, rather, testified that he had decided to plead nolo contendere because he could not contest any of the Commonwealth's evidence. (See id.) Defendant stated during the colloquy that he informed this court that he could not contest this evidence because he was on a "heroin binge" and could recall little, if any, of the three burglaries. (See id.)

We further note that despite defendant's admitted history of heroin use, he testified that he was not then

under the influence of heroin or any other controlled substance during the colloquy. (See Plea Colloquy N.T. 7.) Only after being sentenced to a concurrent term of incarceration did defendant later assert that he knew he "didn't even commit the crimes." (See Withdrawal Hr'g N.T. 5.) Defendant, however, admitted that he remembered stating he was aware of the Commonwealth's evidence, which he could not contest and which was sufficient to convict him in each case. (See *id.*) The contrast between his testimony at the colloquy that he could not contest the Commonwealth's evidence and his statement and his testimony at the hearing on the motion to withdrawal his plea evinces only defendant's displeasure with the length of his sentence rather than any lack of voluntariness during his plea. Based on the foregoing, therefore, we did not find his assertion of innocence to be credible.[16]

Finally, defendant's assertions that he was overwhelmed prior to entering his pleas by his discovery that his co-defendant was prepared to testify against him and by the "fact" that he is actually innocent of the crimes charged, (See Withdrawal Hr'g N.T. 6), are belied by the statements he made during the plea colloquy and the evidence. During the colloquy, defendant testified that he was prepared to proceed to trial, despite not being able to remember the specifics of the three (3) burglaries, and that only upon learning that the co-defendant was going to testify against him did he change his mind. (See Plea Colloquy N.T. 18.)

---

16. The fact that defendant had been in custody from August 4, 2010 to March 14, 2011 provided us with confidence that defendant was not now under the influence of a controlled substance and also that defendant had had a sufficient period of time to review the discoverable materials provided by the Commonwealth prior to his pleas.

Defendant testified that he was grateful that he had been able to speak with his mother prior to deciding to enter a nolo contendere plea. (See Plea Colloquy N.T. 19.) We found defendant's decision was not "spur-of-the-moment" or the result of being overwhelmed by his innocence, but rather was a calculated decision made by defendant after discovering his co-defendant would testify for the Commonwealth and after discussing whether to enter nolo contendere and guilty pleas with both defense counsel and his mother. Even though defendant apparently changed his mind again after being sentenced, he failed to present any credible evidence that his decision to plead nolo contendere and guilty was anything other than voluntary, knowing, and intelligent.

Accordingly, we denied defendant's motion to withdraw his nolo contendere pleas.

## V. CONCLUSION

The foregoing represents this court's opinion regarding defendant's appeal from the denial of his motion to withdraw his nolo contendere pleas.