J-S10044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                                        :
              v.                         :
                                        :
                                        :
MARGARET E. FITZPATRICK           :
                                        :
             Appellant              :     No. 1318 MDA 2020

Appeal from the Judgment of Sentence Entered August 17, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0000497-2019

BEFORE: MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:             **FILED MAY 24, 2021**

Margaret E. Fitzpatrick (Fitzpatrick) appeals from the judgment of sentenced imposed in the Court of Common Pleas of Cumberland County (trial court) after her plea of *nolo contendere* to misdemeanor Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a). Fitzpatrick argues that the trial court erred in denying her motion to withdraw her plea because it was not voluntarily given and she is innocent. We affirm.

We take the following factual background and procedural history from our independent review of the record and the trial court's December 18, 2020 opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

On April 16, 2018, Detective Ray Taylor and Chief County Detective Jonathan Mays were assigned to review a case involving 82 year-old Cumberland County Manor Care resident Frances Baker (Baker) after an April 11, 2018 hearing in the Court of Common Pleas of Cumberland County regarding her need for guardianship due to her mental health and inability to care for herself without assistance. There also were questions concerning money withdrawals from Baker's bank accounts.

On April 25, 2018, the detectives met with Mary Fox (Fox) at the Cumberland County Office of Aging who advised that she had received a report from a source that Baker might be the victim of theft. Before the court assigned guardianship, Fitzpatrick managed Baker's affairs through a power of attorney. After conducting a review of Baker's account, Fox noticed two large check withdrawals from Baker's account payable to Mediation Ministries and Litigation Services (MMLS). Fitzpatrick is the sole founder of MMLS, which advertises itself as an organization providing *pro bono* legal services to underprivileged individuals. The first check withdrawal, dated September 29, 2017, was for $7,500, and the second, dated March 8, 2018, was for $10,000. (**See** Affidavit of Probable Cause, 1/15/19, at 1-2).

On September 7, 2018, when Fitzpatrick met with detectives, she claimed that the $7,500 check was for a realtor's commission after the sale of Baker's property that the realtor said he wanted to donate to MMLS. However,

- 2 -

when detectives met with the realtor, he told them he did not know anything about a donation to MMLS and, in fact, he had donated his services to Baker and did not ask for any commission from her. Fitzpatrick stated that the $10,000 check was for expenses arising from services provided by MMLS for Baker's case, although such services were advertised as *pro bono*. A review of MMLS's financial records indicated the funds donated to MMLS were solely controlled by Fitzpatrick. (***See id.*** at 2-3).

On January 15, 2019, the Commonwealth charged Fitzpatrick with two counts each of Theft by Unlawful Taking as felonies of the first degree and Access Device Fraud as third-degree felonies. She filed a pre-trial motion to dismiss the charges that was denied.

At the August 17, 2020 Call of the List[1] before President Judge Edward E. Guido (Judge Guido),[2] the following conversation occurred:

THE COURT: What are the charges []?

[Senior Assistant District Attorney] MS. METZGER: Your Honor, the theft offense, she did take money from-she had a power-of-attorney and did take money from that person's account. The

_____

[1] "'Call of the List' in Cumberland County is held the morning of jury selection for cases previously called for a jury trial at a pre-trial conference. The purpose of Call of the List is to finalize any last-minute negotiations between parties, for defendants to understand any plea offers tendered, and to call cases for trial while placing on the record the expected number of days, etc." (Commonwealth's Brief, at 4 n.3).

[2] President Judge Edward E. Guido presided over the Call of the List. Judge Christylee L. Peck presided over the Guilty Plea proceedings later that day.

offer is for M-1 with an agreement of probation for 5 years with early termination once she pays off the restitution.

THE COURT: What are the guidelines?

MS. METZGER: The guidelines are …

THE COURT: How much was stolen?

MS. METZGER: I'm sorry?

THE COURT: How much is alleged to have been stolen?

MS. METZGER: 17,000.00, Your Honor.

THE COURT: Ms. Fitzpatrick, you're not going to take that for probation?

[FITZPATRICK]: I can't hear what you're saying. I'm sorry, Your Honor.

THE COURT: The offer is a probationary sentence. You want a trial on this?

[FITZPATRICK]: I'm not sure I understand, sir.

THE COURT: If you go to trial and you're convicted Ms. Fitzpatrick-it won't be my case, because I'll be recused-but it is almost certain you will end up in jail. They are making an offer to give you probation.

[FITZPATRICK]: Oh, okay.

THE COURT: With the opportunity to pay the money back within 5 years. Do you understand that?

[FITZPATRICK]: I think so.

THE COURT: All right.

MS. METZGER: RS to 9 on the Felony 3, Your Honor.

> THE COURT: All right. Well, 17,500.00 almost guarantees she's going to jail. I won't be doing the sentencing, but-all right. Go talk to those two clients.

(N.T. Call of the List, 8/17/20, at 3-4).

Later that day, in Judge Peck's courtroom, Fitzpatrick entered a *nolo contendere* plea to the charge of Theft by Unlawful Taking as a misdemeanor in the first degree in exchange for the Commonwealth withdrawing all the other felony charges. Before entering the plea, counsel assisted Fitzpatrick in answering a 16-question written colloquy. In that document, Fitzpatrick confirmed that she reads, writes and understands the English language, she understood the charges against her as stated in the Information, and that by pleading *nolo contendere*, she was giving up her right to a trial and had limited appellate rights. She also affirmed that no threats or promises had been made to persuade her to enter the plea and that the decision to plead *nolo contendere* was hers alone. (**See** Written *Nolo Contendere* Colloquy Form, 8/17/20, at 2-3).

At the plea hearing, counsel advised the court that Fitzpatrick "feels that in her scope of her power of attorney she was acting appropriately, but she understands the evidence against her." (N.T. Plea Hearing, 8/17/20, at 2). She told the court that Fitzpatrick had "done a lot of charitable work in the community throughout the course of her career" and is "dealing with a lot of health issues. She doesn't want to take this to trial and risk having a felony

and more serious consequences today. So she would like to pay back the restitution as she's able and take responsibility for this." (*Id.* at 3-4).

After the Commonwealth recited the facts, the court engaged in a colloquy with Fitzpatrick. Fitzpatrick admitted that the Commonwealth could prove the recited facts against her beyond a reasonable doubt, and that she understood what it had to prove to establish her guilt of theft and the maximum penalty that could be imposed. She agreed that she was pleading no contest to one count of theft as a misdemeanor and the Commonwealth would dismiss the rest of the charges against her. When the court asked Fitzpatrick if anyone had made any threats or promises to induce her plea or if she was under the influence of drugs or alcohol that rendered her unable to understand what is going on, she answered, "No, Your Honor." Fitzpatrick stated she understood that the sentence would be five years of probation. Finally, the court confirmed again that Fitzpatrick wished to plead no contest to theft. When given the opportunity to speak to the court, Fitzpatrick thanked both the court and counsel, stating that she understood how overwhelmed they can be since she was a former employee of MidPenn Legal Services. (*See id.* at 4-5).

Fitzpatrick agreed to be sentenced that day, and, consistent with the plea agreement, the court sentenced her to pay the costs of prosecution, a $100 fine, restitution to Baker in the amount of $17,500 and up to five years of probation. It also noted that Fitzpatrick would be released from the

probationary period sooner upon the full payment of the costs, fine and restitution if she remained in good behavior. (*See id.* at 6-7).

Approximately one week later, on August 26, 2020, Fitzpatrick filed a motion to withdraw her plea in which she represented that she did not freely and voluntarily enter the plea because she felt "threatened by Judge Guido's demeanor and remarks to her that she would go to prison." (Motion to Withdraw Plea, 8/26/20, at 1). At the September 15, 2020 hearing on the motion, Fitzpatrick testified on direct that she was shocked by Judge Guido's demeanor and "didn't hear much of anything else" other than his statement, "you either take the plea or you go to jail for [five] years." (N.T. Hearing, 9/15/20, at 4). She explained she had known Judge Guido through her work as a Court Appointed Special Advocate (CASA) in dependency court and he had "been nothing but kind," but at the Call of the List, she "felt like Jesus when Judas betrayed him for [thirty] pieces of silver." (*Id.* at 5). She told the court she thought she was going to trial that day and wanted to withdraw the plea now. Fitzpatrick explained her cancer history, hearing problems and family situation, including caring for her 48-year-old son who suffered from schizophrenia. (*See id.* at 4-7).

On cross-examination, Fitzpatrick testified she could not remember if Judge Guido or Judge Peck took her plea because it was "a fog." (*Id.* at 13). She said that her counsel probably explained the agreement the Commonwealth was willing to make in exchange for the plea, but she could

not remember everything that was said, including whether she told her attorney that she was in "in a fog" or "stressed" due to Judge Guido acting "out of character." (*Id.* at 15). Similarly, she stated she could not remember what she said to Judge Peck, the substance of the colloquy or whether she told either Judge Peck or Judge Guido that she had trouble hearing. She also denied that she committed theft or fraud. She agreed that she was on probation, not in jail, because of the plea agreement. The court confirmed that, although in 2003, Fitzpatrick was diagnosed with PTSD resulting from an assault, she had not been diagnosed with any mental health infirmities since taking the plea and her hearing had not changed since that time. (*See id.* at 7-25).

Upon the court's questioning, Fitzpatrick's counsel[3] explained that the Call of the List was hectic, and Fitzpatrick probably was expecting a calmer environment. It was counsel's opinion that there was more pressure to resolve cases at that time due to the Covid-19 pandemic. After Judge Guido asked Fitzpatrick about taking the guilty plea, counsel spoke with her and Fitzpatrick asked about a *nolo contendere* plea, which the Commonwealth ultimately agreed to accept. Although counsel stated that, in hindsight, maybe Fitzpatrick did not understand what a *nolo* plea is, the court stated that

_____

[3] Lindsay M. Renard, Esquire, represented Fitzpatrick at the hearings for the *nolo contendere* plea and the motion to withdraw and spoke to the court in her representative capacity. She also is representing Fitzpatrick on appeal.

it had clearly explained what it was. At no time did Fitzpatrick tell counsel that she felt blind-sided by Judge Guido or threatened to take the plea. Counsel explained that after Fitzpatrick was sentenced, she followed up with counsel with additional questions regarding her post-sentence rights and stated she wanted to appeal the conviction. Counsel confirmed to the court that, if convicted, Fitzpatrick faced a possible maximum sentence of seven years as to each count and that, due to the amount allegedly stolen, the Commonwealth could have argued for a higher sentence. (*See id.* at 25-30).

At the close of the hearing, Judge Peck denied the motion to withdraw, stating that she would have the *nolo* plea hearing transcribed, although she clearly remembered the events, and that, despite the hectic Call of the List, Fitzpatrick appeared in a separate courtroom in front of her where she knowingly, voluntarily and freely entered the *nolo contendere* plea. In her opinion, Judge Peck explains more fully that:

> [Fitzpatrick] testified that Judge Guido told her she would go to jail for 5 years if she did not take the plea. This is not an accurate recitation of Judge Guido's statements. Judge Guido instead asked [Fitzpatrick] if she wanted to go to trial on her charges after hearing that the Commonwealth was offering a probationary sentence and advised [Fitzpatrick] that **if** she was convicted at trial she would almost certainly face incarceration. Same is part of cautionary practice to ensure defendants are fully informed of the bargains available to them. [Fitzpatrick] was subsequently given additional time to speak to counsel after Call of the List to discuss a plea, a discussion which evidently lasted longer than a fleeting moment given that [Fitzpatrick] filled out the 16-question, multiple-subpart plea colloquy with her counsel.
>
> Whatever degree of distress [Fitzpatrick] felt following Call of the List (which we did not find was abnormally heightened in

[Fitzpatrick] outside that which would be naturally felt when faced with information that the maximum penalty is five years following conviction), it was not Judge Guido who took [Fitzpatrick's] plea but this Court, some time later that morning, in a separate proceeding. [Fitzpatrick] did not appear distressed at that time, nor did she relay distress to this Court prior to entering her plea. Nothing prevented [Fitzpatrick] from expressing any issues or disorientation to this Court prior to entering the plea, and, indeed, our colloquy of [Fitzpatrick] presented her with ample opportunity to alert this Court to any concerns she had about pleading.

… Indeed, [Fitzpatrick's] counsel represented at the motion hearing that at the time of the plea, "nothing was conveyed to [her] [indicating] that [Fitzpatrick] felt blind sided." At the close of the plea proceeding, just prior to sentencing, [Fitzpatrick] thoughtfully thanked her counsel for her services, noting that she had been "very kind and very considerate," which was meaningful to her as a former employee of MidPenn Legal Services, and thanked this Court. It is clear to us, as it was clear to us at the time of the plea, that [Fitzpatrick], particularly following both colloquies in which she provided appropriate and satisfactory answers, understood what she was doing in entering the plea.

Finally, [Fitzpatrick's] counsel represented to this Court at the motion hearing that it was [Fitzpatrick] who asked counsel about the prospect of pleading *nolo contendere* after observing counsel with other clients who were pleading *nolo contendere* … at the time of the plea, counsel represented to this Court that [Fitzpatrick] was entering into the plea because "[s]he doesn't want to take this to trial and risk having a felony and more serious consequences today." To the extent [Fitzpatrick] felt compelled to enter the plea because of her interaction with Judge Guido, we again note there was a break in the time between Call of the List and her entry of the plea during which she could and did discuss a plea with counsel, clearly desired the benefit of the bargain which she did so receive, and at no point did she present any indication of compulsion to this Court. While [Fitzpatrick] apparently later regretted her decision to plead, we find that she did enter the plea knowingly, voluntarily, and intelligently, and that manifest injustice has not been done.

(Trial Court Opinion, 12/18/20, at 10-12). Fitzpatrick timely appealed. She

and the court have complied with Rule 1925. *See* Pa.R.A.P. 1925.

## II.

Fitzpatrick argues that the trial court "failed to address and correct manifest injustice in denying [her] Motion to Withdraw her plea, after sentencing, on the basis that her plea was not voluntary and on her assertions that she was innocent of the charges in question." (Fitzpatrick's Brief, at 9).[4] She claims that she was distressed at the time she entered the plea because of the "very personal affront by Judge Guido, someone she previously had greatly admired and respected, [which] affected her mindset throughout the rest of the day." (*Id.* at 13-14). The Commonwealth responds that the court properly denied the motion where Fitzpatrick's answers to both the written and on-the-record *Nolo Contendere* Plea Colloquies, her counsel's representations to the court and Fitzpatrick's active participation in asking to plead no-contest evidence the voluntariness of her plea. (**See** Commonwealth's Brief, at 13).

## A.

We are guided by the following legal principles. "[A]ppellate review of a *nolo contendere* plea is the same as for a guilty plea." **Commonwealth v. Jackson**, 569 A.2d 964, 966 (Pa. Super. 1990), *appeal denied*, 592 A.2d 43 (1990) (citation omitted). "[N]o absolute right to withdraw a guilty plea exists

___

[4] We review a court's ruling on a motion to withdraw a guilty plea for an abuse of discretion. **See Commonwealth v. Muhammad**, 794 A.2d 378, 382 (Pa. Super. 2002).

in Pennsylvania[.] … [A] defendant may withdraw his guilty plea after sentencing only where necessary to correct manifest injustice. … [P]ost-sentence motions for withdrawal are subject to higher scrutiny since the courts strive to discourage the entry of guilty pleas as sentence-testing devices." **Commonwealth v. Hart**, 174 A.3d 660, 664 (Pa. Super. 2017) (internal citations and quotation marks omitted).

To be valid, a guilty plea must be knowingly, voluntarily and intelligently entered. **See Commonwealth v. Pollard**, 832 A.2d 517, 522 (Pa.Super. 2003). "[A] manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly." **Commonwealth v. Gunter**, 771 A .2d 767, 771 (Pa. 2001). The Pennsylvania Rules of Criminal Procedure mandate pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. **See Commonwealth v. Hodges**, 789 A.2d 764, 765 (Pa.Super. 2002). Under Pennsylvania Rule of Criminal Procedure 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which she is pleading guilty; (2) the factual basis for the plea; (3) she is giving up her right to trial by jury; (4) and the presumption of innocence; (5) she is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea. **See Commonwealth v. Watson**, 835 A.2d 786 (Pa. Super. 2003). The reviewing

Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. *See Muhammad, supra* at 384.

Finally, Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise. *See Pollard*, *supra* at 522. "[A] defendant is bound by the statements which [she] makes during [her] plea colloquy." *Commonwealth v. Jabbie*, 200 A.3d 500, 506 (Pa. Super. 2018) (citation omitted). She "may not assert grounds for withdrawing the plea that contradict statements made when [she] pled guilty, and [she] may not recant the representations [she] made in court when [she] entered [her] [] plea." *Id.* (citation and internal quotation marks omitted). "[T]he law does not require that a defendant be pleased with the outcome of his decision to plead guilty. The law requires only that a defendant's decision to plead guilty be made knowingly, voluntarily, and intelligently." *Id.* (citation omitted).

**B.**

We first observe that Fitzpatrick concedes that she read and signed a written plea colloquy, and that Judge Peck conducted a verbal colloquy and she does not challenge their adequacy. (*See* Fitzpatrick's Brief, at 10-16). Indeed, our review of the colloquies confirms that the colloquies adequately

apprised Fitzpatrick of her rights and the consequences of the plea pursuant to Rule 590.[5]

Fitzpatrick argues, however, that under the totality of the circumstances, the plea was involuntary and that her testimony at the hearing on the motion to withdraw "shed additional light on her subjective state of mind during and after the entry of the plea." (*Id.* at 10). Specifically, she points to the fact that she had previous professional interactions with Judge Guido whom she greatly respected, and that "she had such an intense reaction to his behavior that she was 'in a fog' which impacted her understanding of the remainder of the proceedings." (*Id.* at 11) (footnote omitted).[6] She also maintains that her difficulty hearing and understanding the court when she

---

[5] Specifically, Fitzpatrick affirmed that she understood the charges against her, what the Commonwealth would have to prove and that they would be able to do so, and the maximum punishment that could be imposed. She was advised of the trial rights she would be giving up by pleading guilty and her limited appellate rights and confirmed that she understood the decision to plead was hers alone and that no promises or threats were made to induce her plea.

[6] On appeal, Fitzpatrick mentions for the first time that Judge Guido referenced that he would be recusing himself, but then discussed the plea and potential sentence instead of seeking a different judge to handle the matter. (*See* Fitzpatrick's Brief, at 11). However, at the motion to withdraw hearing, she did not argue that Judge Guido should have recused himself from conducting the Call of the List. Hence, any recusal issue is waived for our review. *See* Pa.R.A.P. 302(a). Moreover, Judge Guido did not participate in Fitzpatrick's case other than in his narrow role of conducting the Call of the List, a local procedural custom that included last minute negotiations and ensuring that Fitzpatrick understood the Commonwealth's plea offer, but did not include either taking the plea, conducting the colloquy or engaging in substantive matters. Hence, any argument in this regard would fail.

entered the plea, as well as her health conditions and responsibility for her son, "contributed to her shock, fear, and confusion upon the assertion of Judge Guido that she would 'almost certain[ly] end up in jail' if she did not accept the plea offer[,]" which was not alleviated by the break in the proceedings or the fact that another judge ultimately took the plea. (*Id.* at 12); (*see id.* at 13). Finally, she contends that she indicated to Judge Peck that she is innocent and wanted to challenge the case. (*See id.* at 14).

First, we are not persuaded by Fitzpatrick's claim that her interaction with Judge Guido during the Call of the List rendered her plea involuntary. Her characterization of Judge Guido's statement to her that she faced a five-year prison term if she did not plead guilty is belied by the record. In fact, after hearing the facts of the case and that the Commonwealth was offering a probationary sentence, he confirmed with Fitzpatrick that, despite that offer, she wanted to go to trial where she would almost certainly face incarceration **if convicted**. As explained by the trial court, such is a customary practice by the Cumberland County judiciary to ensure that a defendant is informed about her available options.

Even if, as Fitzpatrick now complains, she was unaware of what she was doing due to her inability to hear, her reaction to Judge Guido's statements that put her "in a fog" and her overall health would not entitle her to relief. While Fitzpatrick did evidence hearing problems, Judge Peck accommodated this by repeating herself to ensure that Fitzpatrick heard and understood the

court's questions. After which, she would fully respond. (**See** N.T. Plea Hearing, at 4-5).

Further, at the plea colloquy, Judge Peck describes Fitzpatrick as not exhibiting any more distress than any other defendant would under the circumstances, and states that she did not present any indication of compulsion, despite having "ample opportunity to alert [the court] of any concerns she had about the pleading." (Trial Ct. Op., at 11). In fact, when given the opportunity to speak on her own behalf, Fitzpatrick thanked her counsel for her services, particularly considering her status as a former employee of MidPenn Legal Services. During the motion hearing, Fitzpatrick's counsel even told the court that at the time of the plea, nothing was conveyed to her indicating Fitzpatrick felt blind-sided. After conducting the colloquy, Judge Peck found that Fitzpatrick understood what she was doing and was voluntarily entering a plea. Under these circumstances, Fitzpatrick's claims that her plea was involuntary because she was in a fog due to the Call of the List, her health issues and responsibilities, do not rise to the level of manifest injustice. **See**, **e.g.**, **Commonwealth v. Willis**, 68 A.3d 997, 1008 (Pa. Super. 2013) (defendant did not enter involuntary plea to justify its withdrawal despite claims that he felt tranquilized during colloquy where counsel did not observe any indication that he was not clear of mind during plea and court conducted colloquy in which defendant cogently answered all questions); **Commonwealth v. Jackson**, **supra** at 966 (*nolo contendere*

plea entered while on prescription drugs valid where defendant failed to indicate he did not understand his rights during his plea and he responded appropriately to all colloquy questions); ***Commonwealth v. Hazen***, 462 A.2d 732, 735 (Pa. Super. 1983) (sedated patient competently entered plea where lower court stated he showed no signs of being influenced by medication at plea hearing and where colloquy transcript showed he cogently answered each question addressed to him).

Hence, Fitzpatrick's claim that she did not enter a voluntary plea due to her reaction to the Call of the List and her hearing, health and personal responsibilities does not merit relief.

Neither are we persuaded by Fitzpatrick's claim that she is innocent and always intended to go to trial as a ground to withdraw her plea of *nolo contendere*.

> [B]y entering a *nolo contendere* plea, a defendant does not admit that he is guilty. … [A] plea of *nolo contendere* is a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of sentencing to treat him as if he were guilty.

***Commonwealth v. V.G.***, 9 A.3d 222, 226 (Pa. Super. Ct. 2010).

The Commonwealth initially offered Fitzpatrick a plea deal based on her entering a guilty plea. However, it ultimately agreed to her request that she be allowed to enter a *nolo contendere* plea in which she did not admit guilt, but instead that the evidence, if proven, would establish the elements required to prove the alleged crimes. At the hearing, her counsel advised the court

that Fitzpatrick herself asked about entering a *nolo contendere* plea and that she was entering the plea because, although "she feels that in her scope of her power of attorney she was acting appropriately, [] she understands the evidence against her." (N.T. Plea Hearing, at 2). Her Written Plea Colloquy expressly asked if Fitzpatrick understood that, by pleading *nolo contendere*, she was giving up her right to a trial, and she answered yes.

Because Fitzpatrick expressly acknowledged that she was giving up her trial rights by entering a *nolo contendere* plea, she is precluded from recanting that statement now where the plea was knowingly and voluntarily entered. *See Jabbie*, *supra* at 506. In the totality of the circumstances, Fitzpatrick's claim of innocence does not rise to the level of manifest injustice necessary for the plea's post-sentence withdrawal. *Hart*, 174 A.3d 660, 664. Accordingly, the trial court properly exercised its discretion in denying Fitzpatrick's motion to withdraw her *nolo contendere* plea. *See Muhammed*, *supra* at 382.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 05/24/2021

- 18 -